United States Court of Appeals,

Fifth Circuit.

No. 93-1546.

Marsha LEFFALL, Individually and as the Surviving Parent of
Dameon Steadham and/or Personal representative of the Estate of
Dameon Steadham, Deceased, Plaintiff-Appellant,

v.

DALLAS INDEPENDENT SCHOOL DISTRICT, et al., Defendants,

Dallas Independent School District and Napoleon B. Lewis,
Defendants-Appellees.

Aug. 15, 1994.

Appeal from the United States District Court for the Northern
District of Texas.

Before KING and WIENER, Circuit Judges, and ROSENTHAL,[*] District
Judge.

KING, Circuit Judge:

Eighteen-year-old Dameon Steadham was killed by random gunfire

in the parking lot of a public high school after a school dance.

The principal question posed by this appeal is whether the decision

of the public school district and the high school principal to

sponsor the dance despite their knowledge of the danger of such an

occurrence violated Steadham's constitutional rights.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The allegations of the complaint, which must be taken as true

for purposes of reviewing a dismissal for failure to state a claim

on which relief can be granted, included the following. On or

about the evening of April 17, 1992, Dameon Steadham attended a

_____

[*]District Judge of the Southern District of Texas, sitting
by designation.

1

dance held upon the grounds of Lincoln High School in Dallas, Texas. The dance was sponsored by Lincoln High School and an organization identified only as the "Parent Teacher Association." After the dance, a number of teenagers congregated in the Lincoln High School parking lot. Several individuals began to fire handguns randomly and recklessly into the air. In the course of the shooting, sixteen-year-old John L. Cofield, a student at Bryan Adams High School, accidentally and fatally shot Steadham in the head.

Steadham's mother, Marsha Leffall, brought the instant suit in Texas state court against the Dallas Independent School District (DISD), Cofield, Marilyn Clayter (Cofield's mother), and Napoleon Lewis (principal of Lincoln High School). The petition and amended petition alleged that at the time of the incident in question it was well-known that students attending schools in the DISD (and Lincoln High School in particular) often carried and fired dangerous weapons on school property. The petition also alleged that the Safety and Security Department of the DISD took inadequate measures to prevent the events leading to Steadham's death, assigning only two unarmed security guards to the Lincoln High School Dance that night. The frequency of gunfire during and after school functions at Lincoln High School was so well-known that officials of the Dallas Police Department had previously asked Lincoln High School officials to refrain from sponsoring school functions until adequate police security could be provided.

After Leffall filed her original petition, the DISD and Lewis

filed a motion for summary judgment on the basis of sovereign immunity. Leffall then amended her petition to include a claim based on 42 U.S.C. § 1983 (without altering the factual allegations made in the original petition). The DISD and Lewis then removed the suit to federal district court and filed a motion in federal court to dismiss for failure to state a claim. Leffall filed a motion to remand the case to state court and replied to the defendants' motion to dismiss. Soon thereafter Leffall filed a motion for leave to file a second amended complaint.

At this point a problem in the record asserts itself. Leffall states in her brief before this court that she appended her second amended complaint to her motion for leave to amend; our review of the record on appeal shows this not to be the case. In a late-filed volume of supplemental record on appeal, we find a copy of a document styled "Plaintiff's Second Amended Original Complaint" and a letter to the clerk of the district court for the Northern District of Texas explaining that the second amended complaint had been stamped "received" instead of "filed." The second amended complaint pleaded Leffall's causes of action against the DISD and Lewis with greater particularity, clearly alleging callous indifference on the part of the DISD and Lewis and alleging that the inadequate security on the night of the dance was provided pursuant to a practice so widespread and well-established as to represent the policy of Lewis and the DISD. The second amended complaint also sought to add a cause of action based on breach of an implied warranty by the DISD and Lewis to paying dance patrons

3

that the dance would be safe to attend and that the DISD and Lewis would provide security adequate to protect patrons from foreseeable criminal activity; this breach of warranty claim was stated in terms of Texas state law rather than in terms of federal law violations. Leffall later filed a motion to compel and for sanctions against the DISD and Lewis for discovery abuse, which was referred to a magistrate judge.

Before the magistrate judge could rule on Leffall's motion to compel and for sanctions, the district court denied Leffall's motions to remand and to amend her complaint and granted the motion to dismiss filed by the DISD and Lewis. Leffall filed a motion to reconsider and a second request for leave to amend her complaint (again, Leffall's third amended complaint appears only in the supplemental record on appeal), both of which were denied, and she timely filed her notice of appeal. She challenges the district court's denial of her motions to remand and to amend her complaint and the dismissal of her lawsuit against the DISD and Lewis.

## II. STANDARDS OF REVIEW

We review a dismissal for failure to state a claim under the same standard used by the district court: a claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Norman v. Apache Corp.,* 19 F.3d 1017, 1021 (5th Cir.1994); *Carney v. RTC,* 19 F.3d 950, 954 (5th Cir.1994).

Because removal is an issue of statutory construction, we review a district court's determination of the propriety of removal

4

de novo. *Garrett v. Commonwealth Mortgage Corp. of Am.,* 938 F.2d 591, 593 (5th Cir.1991). Removal statutes are to be strictly construed against removal. *Brown v. Demco, Inc.,* 792 F.2d 478, 482 (5th Cir.1986); *Noble v. Bradford Marine, Inc.,* 789 F.Supp. 395, 396 (S.D.Fla.1992).

The decision to grant or deny a motion to amend is entrusted to the sound discretion of the district court. *Norman,* 19 F.3d at 1021; *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.,* 933 F.2d 314, 320 (5th Cir.1991). This discretion, however, is limited by Federal Rule of Civil Procedure 15(a), which states that "leave shall be freely given when justice so requires." We have stated that the district court's discretion does not permit denial of a motion to amend unless there is a substantial reason to do so. *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 598 (Former 5th Cir. Nov. 1981). Two valid reasons we have recognized in the past are untimeliness and futility. *E.g., Avatar Exploration,* 933 F.2d at 320-21. If a district court does not give an explanation for its denial of a motion to amend, its reasons must be readily apparent in view of the liberal position of the federal rules on granting amendments. *Dussouy,* 660 F.2d at 597.

### III. ANALYSIS

#### A. MOTION TO REMAND

We turn first to Leffall's contention that the district court erred in denying her motion to remand her lawsuit to state court.[1]

---

[1]This court has jurisdiction over a denial of a motion to remand to state court when coupled with the appeal of a final judgment. *Jones v. Newton,* 775 F.2d 1316, 1317 (5th Cir.1985).

Leffall asserts and the appellees do not deny that she filed her original petition in Texas state court on November 10, 1992, and that Lewis was served with a copy of the original petition on December 9, 1992. Lewis and the DISD answered on November 24, 1992. Leffall filed her amended petition, which added the § 1983 claim, in state court on January 26, 1993. Lewis and the DISD filed their notice of removal on February 4, 1993.

Leffall contends that Lewis and the DISD filed their notice of removal outside the thirty-day time limit established by 28 U.S.C. § 1446(b), which provides as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based....

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable....

The district court concluded that the defendants' notice of removal was timely, stating that "the federal question on which defendants predicate jurisdiction did not appear in the case until January 26, 1993." Leffall claims that the district court applied the incorrect standard to her original petition; in her view, the thirty-day clock began when Lewis received the original petition because the original petition did *not* disclose that the case was *not* removable. For support she relies on *Knudsen v. Samuels,* 715

---

*See generally* 15A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3905.1 (2d ed. 1992).

F.Supp. 1505, 1507 (D.Kan.1989), in which the court stated that "under 28 U.S.C. § 1446(b), the question is not whether the initial pleading discloses the potential for removal but whether it discloses that the case is not removable."

We have recently rejected the argument now advanced by Leffall in *Chapman v. Powermatic, Inc.,* 969 F.2d 160 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1402, 122 L.Ed.2d 774 (1993). In that case, Chapman sued Powermatic, Inc. (Powermatic) in state court; the petition revealed complete diversity of citizenship between the parties but did not allege a specific amount of damages. *Id.* at 161. More than thirty days later, Chapman revealed in the course of discovery that he had suffered over $800,000 in damages, and Powermatic promptly filed a notice of removal. *Id.* We rejected Chapman's argument that the thirty-day removal clock should begin to run when a plaintiff files a pleading that is indeterminate as to removability if the defendant would know in the exercise of due diligence that the case is removable. *Id.* at 162-63. We stated that the removal clock begins to run "from the defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *Id.* at 163; *see also Aaron v. National Union Fire Ins. Co.,* 876 F.2d 1157, 1160-61 (5th Cir.1989) (noting that a defendant may remove a case from state court only when the complaint reveals on its face that it contains an issue of federal law), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028

7

(1990). By the same token, the removal clock began to run in the instant case only when the defendants received a pleading that revealed on its face that Leffall was asserting a cause of action based on federal law.

We find no error in the district court's refusal to remand Leffall's lawsuit to state court.

### B. DISMISSAL FOR FAILURE TO STATE A CLAIM

We begin by reciting the essential elements of a cause of action brought under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988); *Resident Council of Allen Parkway Village v. United States Dep't of Hous. & Urban Dev.,* 980 F.2d 1043, 1050 (5th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 75, 126 L.Ed.2d 43 (1993). With respect to the DISD, a local governmental unit under *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Leffall must also allege that an "official policy or custom" of the DISD was a cause in fact of the deprivation of rights inflicted. *Id.* at 690-91, 98 S.Ct. at 2036; *see also Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.) (en banc) (adopting a definition of "official policy"), *modified on other grounds on reh'g,* 739 F.2d 993 (5th Cir.1984) (en banc). Local governmental units may not be held liable under § 1983 under a theory of *respondeat superior. Monell,*

8

436 U.S. at 691, 98 S.Ct. at 2036; *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 452 (5th Cir.1994) (en banc), *petition for cert. filed,* 62 U.S.L.W. 3827 (U.S. June 1, 1994) (No. 93-1918). Likewise, supervisory officials may not be held vicariously liable under § 1983 for the actions of their subordinates. *Doe,* 15 F.3d at 452.

The issue in the instant case is whether Leffall has alleged sufficient facts to satisfy the first prong of the analysis. Leffall contends that Lewis and the DISD were under an affirmative constitutional duty to protect her son from his injury and death, even though his death was most directly the result of actions taken by a private actor. First, Leffall argues that a "special relationship" existed between the DISD and Lewis and her son, giving rise to a constitutional duty on the part of the state to protect her son from danger during a school-sponsored, albeit voluntary, activity. Second, and in the alternative, Leffall argues that the DISD and Lewis violated a constitutional duty not to create the hazardous environment encountered by her son on the night of the school dance. We consider each argument in turn.

### 1. *"Special Relationship"*

The beacon guiding our analysis of the "special relationship" theory espoused by Leffall is the Supreme Court's opinion in *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). As in *DeShaney,* the plaintiff in the instant case is relying on the substantive component of the Due Process Clause of the Fourteenth Amendment as

9

the source of the claimed constitutional right; Leffall claims that the state was categorically obligated to provide Steadham protection from injury at the school dance, not that the state denied Steadham protection without according him appropriate procedural safeguards. *See id.* at 195, 109 S.Ct. at 1003. As a general matter, it is well-settled that a state's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004.

The *DeShaney* case concerned a § 1983 action brought by Joshua DeShaney, a child who was left seriously and permanently retarded by abuse he suffered at the hands of his father. *Id.* at 191-93, 109 S.Ct. at 1001. Social service workers in the county where DeShaney lived with his father were notified on several occasions that DeShaney was the probable victim of child abuse, and a caseworker recorded facts she personally observed that led her to suspect child abuse. *Id.* at 192-93, 109 S.Ct. at 1001. DeShaney was not removed from his father's custody, however, until a severe beating sent him into a life-threatening coma. *Id.* at 193, 109 S.Ct. at 1001. DeShaney and his mother brought a § 1983 action against the county's department of social services, contending that the county's failure to intervene to protect DeShaney had deprived him of his liberty without due process of law. *Id.* The Court rejected this contention, citing the general rule that the Due Process Clause is not violated by the state's failure to protect an individual from private violence and concluding that DeShaney had

10

not demonstrated the existence of a special relationship between the state and himself that would justify exception to the general rule. *Id.* at 197-200, 109 S.Ct. at 1004-05.

Although DeShaney failed to bring himself within the special relationship exception to the general rule that the state has no constitutional duty to protect individuals from private violence, Leffall contends that Steadham does fit within that limited exception. In the words of the *DeShaney* Court,

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*Id.* at 200, 109 S.Ct. at 1005. For instance, the Court has recognized that substantive due process requires the states to provide involuntarily committed mental patients with such services as are necessary to ensure their reasonable safety from themselves and others. *Id.* at 199, 109 S.Ct. at 1005 (citing *Youngberg v. Romeo,* 457 U.S. 307, 314-25, 102 S.Ct. 2452, 2457-63, 73 L.Ed.2d 28 (1982)). However,

> it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*Id.* at 200, 109 S.Ct. at 1006. It has been noted that some courts have interpreted the phrase "or other similar restraint of personal liberty" to encompass the relationship between school officials and

11

students.    Stephen  Faberman,  Note,  *The  Lessons  of*  DeShaney:
*Special  Relationships,  Schools  &  the  Fifth  Circuit,*  35  B.C.L.REV.
97,  110-11  (1993).    It  is  to  these  cases  that  we  next  turn.

Leffall  relies  on  our  pre-*DeShaney*  decision  in  *Lopez  v.
Houston  Indep.  Sch.  Dist.,*  817  F.2d  351  (5th  Cir.1987),  for
support.    In  *Lopez,*  the  §  1983  plaintiff  was  John  Adam  Lopez,  a
middle  school  student  who  was  injured  during  a  fight  that  occurred
on  a  school  bus  taking  Lopez  and  other  students  home  after  school.
*Id.*  at  352.    Lopez  sued  the  bus  driver,  the  Houston  Independent
School  District  (HISD),  and  other  school  district  officials  under
§  1983.    *Id.*  at  353.    The  district  court  granted  summary  judgment
in  favor  of  the  HISD,  and  we  affirmed.    *Id.*  at  356.    We  observed
that  Lopez  could  have  been  proceeding  against  the  HISD  under  either
of  two  principal  theories:    either  the  HISD  had  an  official  policy
of  giving  its  bus  drivers  inadequate  safety  training  in  light  of  a
pattern  of  serious  disciplinary  problems  on  its  school  buses,  or
the  HISD  adequately  trained  its  drivers  but  ignored  the  widespread
failure  of  its  drivers  to  follow  that  training  when  actual  fights
erupted  on  HISD  school  buses.    *Id.*  at  354.    Scrutinizing  Lopez's
summary  judgment  evidence,  we  concluded  that  Lopez  had  failed  to
carry  his  burden  under  either  theory  because  he  failed  to  show  "a
pre-existing  pattern  of  student  fights  on  buses,  constituting  a
widespread  problem  mandating  an  official  response."  *Id.*   We  also
affirmed  summary  judgment  in  favor  of  the  individual  HISD  officials
because  the  summary  judgment  evidence  could  not  support  a  finding
that  those  officials  were  deliberately  indifferent  to  the  rights  of

12

HISD students. *Id.* at 355.

In Leffall's view, the *Lopez* court recognized a constitutionally-imposed duty on the part of the HISD and its officials not to be callously indifferent to the safety of HISD students. Significantly, the *Lopez* court reversed summary judgment in favor of the bus driver himself, concluding that Lopez raised a genuine issue of fact as to whether the bus driver was callously indifferent to the deprivation of Lopez's constitutional rights. *Id.* at 355-56. The court did not explain why the bus driver owed Lopez the duty not to be callously indifferent to private threats to Lopez's safety, but we may conclude that the court rested this conclusion on the fact that the driver "was entrusted with the care of students attending school under Texas' compulsory education statute." *Id.* at 356. We can thus discern the following holdings in the *Lopez* opinion: (1) a special relationship existed between the bus driver and the students on his bus such that his deliberate indifference to student fights could subject him to liability under § 1983, (2) the bus driver's supervisors were not liable to Lopez because Lopez did not show that they trained bus drivers in a manner deliberately indifferent to students' rights, and (3) the HISD itself was not liable to Lopez, at least in the absence of evidence that the HISD had a policy of indifference to student safety by inadequately training its drivers to deal with student fights in the face of a widespread problem with such fights.

It is unclear how much of *Lopez*'s rationale survives *DeShaney*. *See* 1 MARTIN A. SCHWARTZ & JOHN E. KIRKLIN, SECTION 1983 LITIGATION: CLAIMS,

13

DEFENSES, AND FEES § 3.3 (2d ed. 1991) (including *Lopez* in a list of cases that "are of doubtful validity after *DeShaney*"); *see also Doe,* 15 F.3d at 453, 455-56 (citing *Lopez* only in support of a "deliberate indifference" standard for holding supervisors liable for the actions of their subordinates). In *Griffith v. Johnston,* 899 F.2d 1427 (5th Cir.1990), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991), we considered *DeShaney* in the context of § 1983 claims brought by persons who had adopted children that turned out to have psychological problems and destructive tendencies. Part of the § 1983 plaintiffs' claim was that the state of Texas had infringed on the adopted children's liberty interests prior to their adoption. *Id.* at 1438-40. We agreed with the plaintiffs that a *DeShaney* special relationship existed between the state and children after the children were removed from their natural homes and placed under state supervision, emphasizing that the state affirmative duty to provide services "stems from the limitation which the state has placed on the individual's ability to act on his own behalf, and not from the state's knowledge of the individual's predicament or from its expressions of intent to help him." *Id.* at 1439. Thus, once the children in *Griffith* were officially adopted under Texas law, the duty which the state had assumed with respect to the children's well-being lapsed. *Id.* at 1440. Because the adoptive parents did not contend that the children had received anything but exemplary treatment while in the care of the state, we rejected the plaintiff's § 1983 claim based on a special relationship. *Id.* at

14

1439-40.

In *de Jesus Benavides v. Santos,* 883 F.2d 385, 386-87 (5th Cir.1989), we confronted a § 1983 claim brought against government officials in charge of a city jail by jail detention officers who were injured during an attempted escape. Relying on *DeShaney,* we held that the § 1983 complaint based on the jail supervisors' "callous indifference" or "gross negligence" in failing to protect the jailers from injury was properly dismissed under Rule 12(b)(6). *Id.* at 387-88. We acknowledged that our holding might appear to provide greater protection for prisoners than for guards, but concluded that the distinction drawn by the Court in *DeShaney* compelled such a result. *Id.* at 388. The affirmative duty to protect prisoners, we observed, arises only because the state has, by an affirmative exercise of power, so restrained the prisoner's liberty that he cannot care for himself; prison guards and jailers, on the other hand, are simply employees who are under no compulsion to submit to unsatisfactory working conditions and may quit whenever they please. *Id.; see also Collins v. City of Harker Heights,* --- U.S. ----, ----, 112 S.Ct. 1061, 1070, 117 L.Ed.2d 261 (1992) (holding that the Due Process Clause does not guarantee municipal employees a workplace that is free from unreasonable risks of harm).

Several of our sister circuits have concluded that the relationship between school district and student is not a special relationship within the meaning of *DeShaney.* For instance, the Third Circuit has concluded that high school students who were

15

sexually assaulted during school hours were not in the physical custody of the state as is required under *DeShaney* for a special relationship to arise, and so affirmed the Rule 12(b)(6) dismissal of their § 1983 complaint. *D.R. by L.R. v. Middle Bucks Area Vo. Tech. Sch.,* 972 F.2d 1364, 1368-73 (3d Cir.1992) (en banc), *cert. denied,* --- U.S. ----, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). Likewise, the Seventh Circuit has concluded that the state does not enter a special relationship with students by requiring them to attend school because it "has not rendered its schoolchildren so helpless that an affirmative constitutional duty to protect arises." *J.O. v. Alton Community Unit Sch. Dist. 11,* 909 F.2d 267, 272 (7th Cir.1990). The Eighth and Tenth Circuits have agreed with the Third and Seventh Circuits. *Dorothy J. v. Little Rock Sch. Dist.,* 7 F.3d 729, 732 (8th Cir.1993); *Maldonado v. Josey,* 975 F.2d 727, 732 (10th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993). Indeed, the Tenth Circuit has gone so far as to hold that a school district cannot be liable for a tort inflicted on a student by a private actor during school hours even if its employees knew that the private actor had threatened the student and was present on school grounds. *Graham v. Independent Sch. Dist. No. I-89,* 22 F.3d 991 (10th Cir.1994).

We did not address the question of whether a special relationship exists in an ordinary public school setting in our en banc decision in *Doe v. Taylor Indep. Sch. Dist. Doe* presented an interlocutory appeal from the district court's denial of summary judgment on the basis of qualified immunity. *Doe,* 15 F.3d at 450.

The § 1983 plaintiff in *Doe* brought her lawsuit against one of her high school teachers, her high school principal, and the high school superintendent, alleging that the teacher had sexually molested her and that each of the defendants was liable under § 1983. *Id.* at 449-50. We concluded that summary judgment in favor of the superintendent was proper but that summary judgment in favor of the principal was not. *Id.* at 457-58. Significantly, our analysis was conducted entirely in terms of when a supervisory school official can be held personally liable under § 1983 *for a subordinate's* violation of a student's constitutional rights. *See id.* at 454 (establishing the three elements necessary to establish liability on the part of the supervisory official). The *Doe* defendants attempted to raise *DeShaney* in arguing that Doe had failed to allege a constitutional violation, but we refused even to consider whether a *DeShaney* special relationship arises in the public school context because the issue was wholly irrelevant on the facts of *Doe.* *Id.* at 451 n. 3. The special relationship doctrine is properly invoked in cases involving harms inflicted by third parties, and it is not applicable when it is the conduct of a state actor that has allegedly infringed a person's constitutional rights. *Id.* Thus, we neither adopted or rejected the argument that a *DeShaney* special relationship arises in the ordinary public school context; *Doe* concerned only the proper scope of school officials' constitutional duties when one of their subordinates violates a student's rights. *See id.* at 452 ("Having concluded that Stroud's physical sexual abuse of Jane Doe violated

17

her constitutional right to substantive due process, we next must decide whether school officials ... owe any duty to a schoolchild when a subordinate violates that child's constitutional rights.").

We recently recognized the existence of a special relationship and distinguished the Third Circuit's decision in *D.R. by L.R.* in *Walton v. Alexander,* 20 F.3d 1350, 1355 (5th Cir.1994), *reh'g en banc granted* (5th Cir. July 1, 1994) (No. 93-7313).[2] In *Walton,* the party in interest was a student at the Mississippi School for the Deaf who was sexually assaulted by a fellow student. *Id.* at 1352-53. The student's father brought a § 1983 action against the superintendent of the school on his son's behalf, and we concluded that a *DeShaney* special relationship did indeed exist between the state and the student. *Id.* at 1355. The factors that led us to this conclusion were (1) the school was a boarding school with twenty-four hour custody of the student, (2) the student was deaf and lacked the basic communications skills that normal children possess, (3) the student was obviously not free to leave while he lived at the school, and (4) economic realities essentially force most Mississippi families with deaf children to send their children to the school. *Id.* In sum, the "residential special education provided by ... Mississippi has a significant custodial component wherein Walton was dependent on the School for his basic needs and lost a substantial measure of his freedom to act." *Id.*

---

[2]Under Fifth Circuit Local Rule 41.3, the order granting rehearing en banc in *Walton* vacates the panel opinion in that case. We discuss that opinion in full despite the grant of rehearing en banc because we find it distinguishable on the facts.

18

The instant case is distinguishable on its facts from *Walton.* Lincoln High School is not a school for the disabled, nor is it a boarding school with twenty-four hour custody of its students. Even assuming that Steadham was required by Texas law to attend school at his age, Leffall has not alleged that he was compelled to attend the dance on the night in question. Thus, we need not go so far as have some of our sister circuits and conclude that no special relationship can ever exist between an ordinary public school district and its students; we conclude only that no such relationship exists during a school-sponsored dance held outside of the time during which students are required to attend school for non-voluntary activities. As the *DeShaney* Court observed,

> [t]hat the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been in had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter.

*DeShaney,* 489 U.S. at 201, 109 S.Ct. at 1006. Likewise, even though Steadham may have been compelled to attend school during the day, any special relationship that may have existed lapsed when compulsory attendance ended. *See Griffith,* 899 F.2d at 1440 (holding that children are no longer in a special relationship with the state once they are officially adopted). In sum, we conclude that the *Walton* holding is not applicable to the facts presented in the instant case.

Because no special relationship exists between a school district and its students during a school-sponsored dance held outside of the time during which students are required to attend

19

school for non-voluntary activities, the district court did not err in concluding that Leffall could not state a claim based on a *DeShaney* special relationship between the DISD and/or Lewis and Steadham.

## 2. *State-Created Danger*

Leffall contends in the alternative that the DISD and Lewis violated Steadham's constitutional rights by affirmatively creating the hazardous environment that Steadham encountered the night of his death. Some courts have found support for this theory of § 1983 liability in the *DeShaney* opinion, in which the Court remarked, "While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *DeShaney,* 489 U.S. at 201, 109 S.Ct. at 1006; *see also Salas v. Carpenter,* 980 F.2d 299, 309 (5th Cir.1992) ("Courts have found a denial of due process when the state creates the faced danger."). The Seventh Circuit neatly summed up the state-created danger theory in *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982), as follows: "If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into the snake pit." In Leffall's view, the decision of the DISD and Lewis to continue to sponsor dances at Lincoln High School after school hours despite warnings from the Dallas Police Department of the risk of harm to students attending such dances effectively created

20

a hazardous environment posing an unreasonable risk of harm to all who attended such dances.

We have found no cases in our circuit permitting § 1983 recovery for a substantive due process violation predicated on a state-created danger theory, and it could be argued that the passage from *DeShaney* quoted above was meant only to describe the kind of circumstances giving rise to a "special relationship" between state and individual; for purposes of this case, however, we may assume without deciding that our court would recognize the state-created danger theory. We first review the cases from other circuits relying on this theory. In *Wood v. Ostrander,* 879 F.2d 583, 590 (9th Cir.1989), *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990), for instance, the court held that a § 1983 plaintiff could survive summary judgment when she had introduced evidence that a police officer had arrested the driver of a car and deserted the plaintiff, who was the passenger, in a high crime area in the middle of night, where she was later sexually assaulted. In *White v. Rochford,* 592 F.2d 381, 382-83 (7th Cir.1979), the court found that the § 1983 plaintiffs, who were small children, had stated a claim when they alleged that police officers had arrested their uncle and left them unattended in a car on the side of the freeway. In *L.W. v. Grubbs,* 974 F.2d 119, 121-22 (9th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993), the court held that the § 1983 plaintiff had stated a claim by alleging that she was a registered nurse employed by the state of Oregon, that her supervisors had directed her to work alone with

21

a known violent sex offender after leading her to believe that she would not be required to work under such conditions, and that she had been assaulted by the sex offender once she was alone with him. Other cases cited by Leffall are to similar effect. *See, e.g., Dwares v. City of New York,* 985 F.2d 94, 98-99 (2d Cir.1993) (holding that it would violate due process for police officers to conspire with "skinheads" and sanction violence by skinheads against persons demonstrating and burning American flags); *Nishiyama v. Dickson County, Tenn.,* 814 F.2d 277, 282-83 (6th Cir.1987) (en banc) (holding that a § 1983 complaint stated a claim by alleging that county officials allowed a convicted felon "trusty" to drive a patrol car and that the trusty had used the patrol car to direct a motorist to pull over to the side of the road, where the trusty murdered her). We note that the First Circuit has refused to extend the state-created danger doctrine to a case in which the state provided a van to transport a mentally ill person and the person injured himself by jumping out of the van because he was insufficiently restrained. *Monahan v. Dorchester Counseling Ctr., Inc.,* 961 F.2d 987, 993 (1st Cir.1992) ("Although the Commonwealth [of Massachusetts] may have played some causal role in the harm, it did so only because Monahan voluntarily availed himself of a Commonwealth service.").

Even under the rationale of the cases recognizing a state-created danger theory of § 1983 liability, it is not enough to show that the state increased the danger of harm from third persons; the § 1983 plaintiff must also show that the state acted

22

with the requisite culpability in failing to protect the plaintiff from that danger to make out a constitutional violation. Although the Supreme Court has yet to decide precisely what level of culpability is required as an element of a substantive due process violation, *see Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986) ("[T]he Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty, or property."), the cases consistently require a § 1983 plaintiff relying on substantive due process to show that the state actors are guilty of "deliberate indifference" towards the victim of the deprivation, *e.g., L.W. v. Grubbs,* 974 F.2d at 122-23 (holding that the § 1983 plaintiff alleged facts sufficient to demonstrate "official deliberate indifference" with respect to a state-created danger); *Manarite v. City of Springfield,* 957 F.2d 953, 956 (1st Cir.) (stating that the "deliberate indifference" standard requires the plaintiff to show (1) an unusually serious risk of harm existed, (2) the defendant had actual knowledge, or was willfully blind to, the elevated risk, and (3) the defendant failed to take obvious steps to address the risk), *cert. denied,* --- U.S. ----, 113 S.Ct. 113, 121 L.Ed.2d 70 (1992); *Salazar v. City of Chicago,* 940 F.2d 233, 238 (7th Cir.1991) ("[O]nly intentional or reckless conduct violates the due process clause.... By reckless conduct we mean conduct that is reckless in the criminal sense; that is, conduct "that reflects complete indifference to risk—when the actor does not care whether the other person lives or dies, despite

23

knowing that there is a significant risk of death.' " (citations omitted)); *see also* 1 SHELDON H. NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION: THE LAW OF SECTION 1983 § 3.10 (3d ed. Supp.1993) (observing that "the prevailing rule in the circuits is that deliberate indifference or reckless disregard is required for substantive due process violations. Gross negligence is insufficient."); *cf. Doe,* 15 F.3d at 454 (holding that a supervisory school official will be liable under § 1983 when a subordinate sexually abuses a student only if the supervisory official demonstrated "deliberate indifference" to the student's constitutional rights). In *Gonzalez v. Ysleta Indep. Sch. Dist.,* 996 F.2d 745, 760 (5th Cir.1993), we concluded that a school district may be held liable for its supervisory failure to prevent a teacher from sexually molesting a student only if its failure "manifested a deliberate indifference to the welfare of school children." Deliberate indifference is perhaps a lesser standard than we suggested in dicta in *Salas,* in which we intimated that, even if we were to recognize a constitutional violation based on a state-created danger, the conduct by the state would have to be so extreme as to "shock[ ] the conscience." *Salas,* 980 F.2d at 309 (holding that law enforcement agents' unsuccessful attempt to rescue a hostage from her abductor did not violate substantive due process even if the state actors' conduct was not error-free).

Assuming arguendo that the decision of the DISD and Lewis to sponsor the dance at Lincoln High School despite their awareness of the dangers posed thereby was negligent, perhaps even grossly so,

we conclude that the conduct of the state actors did not rise to the level of deliberate indifference, which is, after all, a "lesser form of intent" rather than a "heightened degree of negligence." *Doe,* 15 F.3d at 453 n. 7. This was not a case in which the state knowingly brought the victim into close proximity with a specific individual known to be likely to commit violence, like *Grubbs,* or abandoned the victim in a highly dangerous environment, like *Wood* or *Rochford,* or conspired with the private actor who inflicted the deprivation, like *Dwares.* Nor did the defendants decide to sponsor the dance with an utter lack of regard for the safety of the attendees. Leffall admits in her complaint that the school officials provided two security guards, albeit unarmed guards, on the night in question, which refutes any contention that the school officials deliberately ignored the risk to persons attending the dance. Although the existence of deliberate indifference is often a "fact-laden question," *Doe,* 15 F.3d at 456 n. 12, we conclude that Leffall's complaint affirmatively discloses that the state actors in the instant case were not deliberately indifferent to Steadham's constitutional rights, *see id.* (observing that "good faith but ineffective responses" by state actors tend to defeat claims of deliberate indifference).

Although we do not condone the decisions made by the state actors in this case, we are bound by the principle that "there is a significant distinction between a tort and a *constitutional* wrong." *de Jesus Benavides,* 883 F.2d at 388. We conclude that,

25

even assuming that substantive due process imposed some duty on the state to protect Steadham from dangers arising out of sponsorship of the dance at Lincoln High School, Leffall failed to allege a violation of Steadham's due process rights in her complaint because she did not allege facts that demonstrated deliberate indifference to those dangers on the part of the state actors.

### C. MOTION TO AMEND

Finally we consider the propriety of the district court's denial without explanation of Leffall's motion for leave to amend. Leffall filed her motion within two months of removal of the case to federal court, before any meaningful adjudication of any issue in her suit, so we may conclude that the court's denial of her motion was not based on untimeliness or undue prejudice to the opposing parties.  It appears likely that the district court viewed the amendment as futile in light of its decision that Leffall had failed to state a cognizable federal claim, and we proceed to evaluate her proposed amendment on that assumption.

In her second and third amended complaints, Leffall added greater specificity to the factual allegations made in her first amended complaint and added a new cause of action based on state warranty law.  She did not allege any new theories of recovery under § 1983 or any other federal law.  Again she relied solely on the decision of Lewis and the DISD to sponsor the dance at Lincoln High School with inadequate security in place as the state action causing the alleged deprivation of Steadham's rights.  In sum, again assuming that *DeShaney* permits recognition of a substantive

26

due process right to be free from state-created dangers of this kind absent a special relationship, nothing in the proposed amended complaints alters our conclusion, *see supra* part III.B, that Leffall failed to allege facts establishing deliberate indifference on the part of the defendant state actors towards the safety of those attending the dance.

We find no error in the court's denial of Leffall's motions for leave to amend.

### IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.