74 F.3d 1249
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Steve D. HINDI, Plaintiff-Appellant,
v.
PRIME PRODUCTION, a New Mexico business enterprise; Max A.
Abeyta, in his official capacity and individually; New
Mexico State Athletic Commission, an agency of the State of
New Mexico, Defendants-Appellees.
 No. 95-2049.
 United States Court of Appeals, Tenth Circuit.
 Jan. 10, 1996.
 
 ORDER AND JUDGMENT[1]
 Before TACHA and BARRETT, Circuit Judges, and BROWN,** Senior District Judge.
 TACHA, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Steve D. Hindi, a professional boxer, claims that during a boxing match on October 30, 1992, he fell through the ropes of the ring and off the edge of the ring apron, causing injury to his foot and leg. Plaintiff originally brought this action in New Mexico state court, alleging that defendant Max Abeyta, Events Coordinator for defendant New Mexico State Athletic Commission (the Commission), failed to enforce the Commission regulations governing the size and specifications for boxing rings, which proximately caused the injury to plaintiff.
 
 
 3
 In his original complaint, plaintiff asserted several claims based on state law, and a claim pursuant to 42 U.S.C.1983. Plaintiff alleged that defendant Abeyta approved the ring for use, knowing it was not in compliance with minimum Commission requirements as to the number of ties required on the ropes and the width of the ring apron. Plaintiff contended that this action by Abeyta, on behalf of the Commission, was "arbitrary, capricious, exhibited extreme indifference to Plaintiff's interests, and constituted a denial of Plaintiff's constitutionally protected interests without due process of law." Appellant's App. at 5. In addition, plaintiff claimed that defendant Prime Production, promoter of the boxing match, was negligent in failing to provide a conforming boxing ring, and the Commission was under an affirmative duty to compel Prime Production, or its insurance carrier, to pay plaintiff's medical bills.
 
 
 4
 Defendants Abeyta and the Commission removed the case to the United States District Court for the District of New Mexico, answered the complaint, and moved for summary judgment. Based on information plaintiff claims he received only after filing his complaint, he moved to file an amended complaint before responding to the summary judgment motion. Following a hearing on both motions, the district court entered three separate orders, granting summary judgment to Abeyta and the Commission based on plaintiff's admission that the claims in the original complaint were unsupportable, denying the motion to amend as futile, and remanding the case to state court for disposition of any remaining state law claims. Plaintiff appeals, and we affirm, addressing each order individually.
 
 I. Partial Final Judgment
 
 5
 According to information gleaned from defendants' answers to the complaint and motion for summary judgment, plaintiff became aware that the Commission regulations upon which he based his claims were not enacted until over one year after plaintiff's injury. Therefore, in his response to defendants' motion for summary judgment, plaintiff acknowledged that the information he had learned subsequent to filing his original complaint, "made the claims against these Defendants unsupportable." Appellant's App. at 63. When questioned by the court at the hearing, counsel for plaintiff reiterated plaintiff's position that summary judgment in favor of Abeyta and the Commission on the original complaint was appropriate. Id. at 161.
 
 
 6
 On appeal plaintiff appears to argue that, because the district court denied his motion to amend, the grant of summary judgment "effectively denied any opportunity" for an adjudication of his claims. Without citation of authority, plaintiff claims this is reversible error.
 
 
 7
 This argument is meritless. It is clear that plaintiff confessed defendants' motion for summary judgment as to the claims in the original complaint. Therefore, plaintiff could present no material issue of fact in dispute regarding the claims in his original complaint, and defendants Abeyta and the Commission were entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Hagelin for President Comm. v. Graves, 25 F.3d 956, 959 (10th Cir.1994), cert. denied, 115 S.Ct. 934 (1995).
 
 II. Order Denying Motion to Amend Complaint
 
 8
 Next, plaintiff appeals the district court's order denying his motion to file a first amended complaint. The district court determined the amended complaint would be futile as failing to state a claim upon which relief could be granted.
 
 
 9
 Federal Rule of Civil Procedure 15(a) allows the court to grant leave to amend a complaint, after lapse of the permissive period, "when justice so requires." We review a district court's denial of leave to amend a complaint for an abuse of discretion. Ketchum v. Cruz, 961 F.2d 916, 920 (10th Cir.1992). "[T]he court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.' " Triplett v. LeFlore County, 712 F.2d 444, 446 (10th Cir.1983)(quoting 3 Moore's Federal Practice, p 15.10 & n. 2 (1983)). Although the district court must justify its denial of a motion to amend, the futility of amendment constitutes such justification. See Foman v. Davis, 371 U.S. 178, 182 (1962).
 
 
 10
 In his proposed first amended complaint, plaintiff contends that New Mexico statutory law creates a duty in the Commission to regulate the sport of boxing, and the mandatory nature of that duty creates a special relationship and a liberty interest which is protected by the due process clause of the Fourteenth Amendment. The district court rejected this argument. In so doing, it cautioned plaintiff regarding possible Fed.R.Civ.P. 11(b) violations due to plaintiff's assertion of claims not "warranted by existing law or by nonfrivolous argument." Appellant's App. at 180. The court stated that even a "cursory review" of Collins v. City of Harker Heights, 503 U.S. 115 (1992), DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), and Daniels v. Williams, 474 U.S. 327 (1986), would "lead a competent attorney to conclude that there is no claim or legal contention warranted under these circumstances for a Section 1993(sic) claim." Appellant's App. at 180. The district court also expressed some difficulty in understanding the constitutional basis of plaintiff's claims. Id. at 171-72. After reading plaintiff's briefs, we understand the court's concern as, on appeal, plaintiff continues to proffer arguments which are not the picture of clarity.
 
 
 11
 It is unclear whether plaintiff is seeking to establish a constitutionally protected right to certain procedures or to establish the existence of a substantive right created by the New Mexico statute authorizing the Commission to promulgate and enforce regulations regarding the sport of boxing. There is no right in procedures alone, however, see Doyle v. Oklahoma Bar Ass'n, 998 F.2d 1559, 1570 (10th Cir.1993), and, as the following discussion will demonstrate, DeShaney bars plaintiff's attempt to establish a substantive right under the facts here.
 
 
 12
 As best we can discern, plaintiff appears to argue that the Commission had an affirmative duty to promulgate and enforce regulations governing boxing ring specifications. He asserts that the Commission's failure to do so prior to his injury created an unsafe condition, causing his injury, which is actionable under 1983 as a violation of his substantive due process rights.
 
 
 13
 The Due Process Clause of the Fourteenth Amendment, however, was intended "to protect the people from the State, not to ensure that the State protected them from each other." DeShaney, 489 U.S. at 196. Generally, state actors are liable under the Due Process Clause only for their own acts and not for the acts of private third parties. Id. at 196-97. We have interpreted DeShaney to carve out two exceptions to this rule: "(1) the special relationship doctrine; and (2) the 'danger creation' theory." Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir.1995). In his appellate brief, plaintiff appears, in some fashion, to argue both exceptions as applicable here. We do not agree.
 
 
 14
 In Uhlrig, we addressed this issue under comparable facts, reviewing dismissal of claims brought by the husband of a woman killed by an inmate at a mental institution. The decedent, an activity therapist employed at the hospital, was killed by a patient who had previously been housed in a special unit for the criminally insane. Plaintiff claimed that the state's fiscal decision to close the special unit and house the special unit patients elsewhere in the hospital recklessly created the danger which led to his wife's death, and was therefore, actionable under 1983.
 
 
 15
 In rejecting the plaintiff's claims, we concluded that the "special relationship" doctrine was inapplicable to a consensual employment relationship. Id. We determined a "special relationship" to exist only "when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protections to that individual (e.g. when the individual is a prisoner or involuntarily committed mental patient)." Id. This is in accord with DeShaney, in which the Supreme Court stated:
 
 
 16
 In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf--through incarceration, institutionalization, or other similar restraint of personal liberty--which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.
 
 
 17
 489 U.S. at 200. Here, it is undisputed that plaintiff's relationship with the defendants was consensual and his participation in the boxing event was voluntary. Therefore, under these circumstances, plaintiff cannot sustain a claim based on the existence of a special relationship.
 
 
 18
 Plaintiff also appears to argue that the state negligently and recklessly placed him in a position of danger. In Uhlrig, we held that in order for a state to be held liable under 1983 for creating a danger where someone other than a state actor causes the injury, "a plaintiff must allege a constitutionally cognizable danger" which ultimately rests on reckless or intentional "injury-causing state action which 'shocks the conscience.' " 64 F.3d at 572.
 
 
 19
 We set forth five factors to be considered when determining whether defendants' conduct created a danger to plaintiff that shocks the conscience. To meet this standard, plaintiff must show that (1) plaintiff was a member of a limited and definable group; (2) the conduct of defendants placed plaintiff and the group in immediate risk of serious harm; (3) the danger was obvious and known to defendants; (4) defendants recklessly and consciously disregarded the risk; and (5) defendants conduct, "when viewed in total," shocked the conscience. Id. at 574.
 
 
 20
 " '[I]t is not enough to show that the state increased the danger of harm from third persons; the [ ] 1983 plaintiff must also show that the state acted with the requisite degree of culpability in failing to protect the plaintiff.' " Id. at 573 (quoting Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 531 (5th Cir.1994)). There must be an "intent to harm," or "an intent to place a person unreasonably at risk of harm." Id. at 573. A plaintiff must go beyond intentional or reckless conduct and assert a "high level of outrageousness." Id. at 574.
 
 
 21
 Plaintiff falls far short of this standard. Even assuming that plaintiff, as a professional boxer, is a member of a limited and definable group, he failed to allege any facts which would support the remaining factors necessary to maintain his suit under the theory of a reckless creation of danger. He alleged no state actor conduct which could be considered intentional or reckless, let alone outrageous. He has alleged no facts which would lead the court to believe that the risk was obvious or that the Commission knew that its omission would place plaintiff at risk of injury. Overall, he failed to show that defendants' conduct rises to the level of a substantive due process violation. Therefore, any claim plaintiff attempts to maintain under this theory fails.
 
 
 22
 This reasoning also serves to undermine plaintiff's somewhat garbled argument that the Commission's failure expediently to enact regulations is negligence amounting to a due process deprivation. In Daniels, the Supreme Court stated that the Constitution "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." 474 U.S. at 327. The Court further stated that to hold injury caused by mere negligence in violation of the Fourteenth Amendment, "would trivialize the centuries-old principle of due process of law." Id.; see also Collins, 503 U.S. at 128 (noting previous rejections of claims purporting to interpret the Due Process Clause to create federal duties that are traditionally created by state tort law).
 
 
 23
 In Collins, the Supreme Court considered and rejected an argument that a municipality's alleged failure to provide a safe working environment violated the Due Process Clause. In so doing, the Court stated that the petitioner could not claim that the city deprived him of his liberty when it offered, and he accepted, employment. 503 U.S. at 128. Collins is applicable here. Plaintiff's participation in the boxing match was voluntary. He could have, without repercussions, refused to commence or continue the match if at any time he felt his safety was compromised.
 
 
 24
 In sum, we conclude that plaintiff's amendment failed to state a cogent claim.[2] Thus, the district court's denial of his motion to amend as futile was justified. See Ketchum, 961 F.2d at 920-21.
 
 III. Remand Order
 
 25
 Following the district court's grant of summary judgment to the state defendants and its denial of plaintiff's motion to amend his complaint, the court issued an additional order remanding the remaining state law claims to state court. Appellant's App. at 99-100. Remand orders issued on the ground stated in 28 U.S.C. 1447(c), lack of subject matter jurisdiction, are not reviewable on appeal. 28 U.S.C. 1447(d); Albertson's, Inc. v. Carrigan, 982 F.2d 1478, 1479 (10th Cir.1993). The district court's remand order is predicated specifically on the lack of federal court subject matter jurisdiction to decide the state law claims. Therefore, we have no authority to review the remand.
 
 
 26
 The judgment of the United States District Court for the District of New Mexico is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [2]
 Because we agree with the district court that no constitutional violation occurred, we need not consider the qualified immunity issue. See Hinton v. City of Elwood, 997 F.2d 774, 780 & n. 5 (10th Cir.1993)(holding that if alleged conduct did not violate existing law, there is no need to consider whether the law was clearly established)