# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 10, 2020

No. 19-30492

Lyle W. Cayce
Clerk

The Parish of Plaquemines,

*Plaintiff—Appellee*,

The State of Louisiana, ex rel, Jeffrey Martin Landry, Attorney General; The State of Louisiana, through the Louisiana Department of Natural Resources Office of Coastal Management and its Secretary, Thomas F. Harris,

*Intervenors—Appellees*,

*versus*

Chevron USA, Incorporated, As Successor in Interest to Chevron Oil Company and The California Company; Exxon Mobil Corporation, As Successor in Interest to Exxon Corporation and Humble Oil and Refining Company; ConocoPhillips Company, As Successor in Interest to General American Oil Company of Texas,

*Defendants—Appellants*,

_____

Consolidated with 19-30829

Parish of Cameron,

*Plaintiff—Appellee*,

No. 19-30492 c/w
No. 19-30829

STATE OF LOUISIANA, EX REL, JEFF LANDRY; STATE OF LOUISIANA, ON BEHALF OF LOUISIANA DEPARTMENT OF NATURAL RESOURCES, ON BEHALF OF OFFICE OF COASTAL MANAGEMENT, ON BEHALF OF THOMAS F. HARRIS,

*Intervenors—Appellees*,

*versus*

BP AMERICA PRODUCTION COMPANY; CHEVRON PIPE LINE COMPANY; CHEVRON USA HOLDINGS, INCORPORATED; CHEVRON USA, INCORPORATED; EXXON MOBIL CORPORATION; KERR-MCGEE OIL & GAS ONSHORE, L.P.; SHELL OFFSHORE, INCORPORATED; SHELL OIL COMPANY; SWEPI, L.P.; TEXAS COMPANY,

*Defendants—Appellants*.

---

Appeals from the United States District Court
for the Eastern and Western Districts of Louisiana
USDC No. 2:18-CV-5217
USDC No. 2:18-CV-677

---

Before HO, ENGELHARDT, and OLDHAM, *Circuit Judges*.
JAMES C. HO, *Circuit Judge*:

Beginning in 2013, a group of Louisiana Parishes, supported by the Louisiana Department of Natural Resources and the Louisiana Attorney General as intervenors, filed suit in state court seeking relief from various oil companies under the Louisiana State and Local Coastal Resources Management Act of 1978 (SLCRMA). The Parishes alleged that the oil companies were liable for acts they committed during World War II. Earlier in the litigation, the companies tried to remove the cases to federal court, but were rebuffed. After the parishes filed an expert report in one of the cases, the companies tried again to remove to federal court, based on that report.

Both the Eastern and Western Districts of Louisiana disagreed with the companies and remanded the cases back to the state court. We conclude that the information disclosed in the expert report did not provide new information previously unavailable to the companies, warranting removal. We accordingly affirm on timeliness grounds.

## I.

Congress enacted the Coastal Zone Management Act of 1972, 86 Stat. 1280 (codified as amended at 16 U.S.C. §§ 1451–65), to encourage states to manage their coasts through federally approved programs. 16 U.S.C. § 1452(2). Following that invitation, Louisiana enacted SLCRMA, LA. STAT. ANN. §§ 49:214.21–:214:42, in 1978. SLCRMA established a permitting program for anyone wishing to start a "use" in Louisiana's coastal zone. LA. STAT. ANN. § 49:214.30(A)(1). A "use" is an activity with "a direct and significant impact on coastal waters." LA. STAT. ANN. § 49:214.23(13). Louisiana courts could impose civil liability and damages and order environmental restoration measures for "uses conducted within the coastal zone without a coastal use permit . . . or which are not in accordance with the terms and conditions of a coastal use permit." LA. STAT. ANN. § 49:214.34(E). However, SLCRMA's grandfather clause allows "uses legally commenced or established prior to the effective date of the coastal use permit program" without requiring "a coastal use permit." LA. STAT. ANN. § 49:214.34(C)(2).

The Parishes sued several oil companies that engaged in oil and gas exploration, production, and transportation along Louisiana's coast. Starting in the 1940s—decades before SLCRMA took effect in 1980—the companies drilled wells from barges and dredged and maintained networks of canals to access those wells. According to the Parishes, the companies' continued use of those wells and canals violates SLCRMA, either because the companies

lack a permit for that use, or because the companies' use violates a permit. Nor does the grandfather clause apply, say the Parishes, because any pre-1980 "operations or activities" were not "'lawfully commenced or established' prior to the implementation of" SLCRMA. Further, the Parishes argue that the activities "were prohibited prior to 1978 by various provisions of Louisiana Statewide Orders . . . various field wide orders, as well as various orders of the Louisiana Stream Control Commission."

The Parishes disclaim any "cause of action arising under federal law or federal regulations." So when the companies first tried to remove these cases, the district courts remanded based on the absence of a federal question. *See*, *e.g.*, *Parish of Cameron v. Auster Oil & Gas, Inc.*, 2018 WL 2144281, at *3 (W.D. La. May 9, 2018); *Stutes v. Gulfport Energy Corp.*, 2017 WL 4286846, at *15 (W.D. La. June 30, 2017), *report and recommendation adopted*, 2017 WL 4274353 (W.D. La. Sept. 26, 2017); *Plaquemines Parish v. Rozel Operating Co.*, 2015 WL 403791, at *5 (E.D. La. Jan. 29, 2015).

On April 30, 2018, Plaquemines Parish served their expert report, and included a certification that it represented the Louisiana Department of Natural Resources' position in all forty-two cases (the "*Rozel* Report"). The companies claim that the *Rozel* Report was their first notice that the Parishes' claims relied, at least in part, on actions they took during World War II.

Based on that fact, the companies again sought to remove all forty-two cases to federal court. The companies contend that the *Rozel* Report makes clear for the first time that they are being sued for activities they took during World War II while acting under the authority of a federal wartime agency, namely, the Petroleum Administration for War—making the case removable under the federal officer removal statute. 28 U.S.C. § 1442. The companies also contend that the *Rozel* Report demonstrates that the Parishes' claims implicate federal question jurisdiction.

No. 19-30492 c/w
No. 19-30829

The Parishes again moved to remand the cases. Both the Eastern and Western Districts of Louisiana granted those motions and ordered the cases be remanded back to state court.

## II.

An order remanding a case to state court is "not generally reviewable." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (en banc). But an order remanding a case to state court after having been removed under the auspice of § 1442 is reviewable "by appeal or otherwise." *Id.* (quoting 28 U.S.C. § 1447(d)). We review the remand order de novo "without a thumb on the remand side of the scale." *Id.* (quoting *Legendre v. Huntington Ingalls, Inc.*, 885 F.3d 398, 400 (5th Cir. 2018)).

In this case, the remand was appropriate because the companies filed their notices of removal too late. Section 1446(b) provides two deadlines for filing the notice of removal. The first requires defendants to file notices of removal "within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). That deadline applies if the basis for federal jurisdiction is evident "on [the pleadings'] face." *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992); *see Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994) (same). But if the basis of federal jurisdiction is not evident from the face of an initial pleading, § 1446(b)(3) allows a defendant to remove a case to federal court thirty days after it receives "an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

The parties agree that the companies' second notice of removal is untimely unless it was not evident on the face of the complaints that the case included claims arising during World War II. The companies argue that

neither the Parishes' initial complaint, nor their broad discovery requests, alerted them to the fact that the Parishes' claims rested, at least in part, on wartime activities. Instead, they contend, it was not until the Parishes produced the *Rozel* Report that it became clear they were being sued for wartime conduct.

We disagree. The *Rozel* Report simply repeated information from a 1980 Louisiana Coastal Resources Program Final Environmental Impact Statement (FEIS) that the Parishes filed with the court before the companies' *first* removal attempt in 2013. The FEIS discusses many of the specific wells involved in this litigation by referring to their unique serial numbers. And those serial numbers refer to wells the companies drilled before or during World War II. Accordingly, the *Rozel* Report is not a "paper from which it may *first* be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added). *See also Chapman*, 969 F.2d at 163 (same).

We affirm.