Mary **CALLIS**, Plaintiff,

v.

Officer Michael K. **SELLARS**, the City of Houston Chief of Police, Sam Nuchia, Sergeant Michael Fite and Sergeant L.L. Shoemaker, Defendants.

Civil Action No. H–94–4391.

United States District Court,
S.D. Texas,
Houston Division.

Feb. 27, 1996.

Ken E. Harper, Houston, TX, for Mary Callis.

Richard H. Cobb, Houston, TX, Robert Louis Cambrice, City of Houston Legal Dept., Houston, TX, for Michael K. Sellars.

Robert Louis Cambrice, City of Houston Legal Dept., Houston, TX, for City of Houston, Sam Nuccia, Martin Fite, L.L. Shoemaker.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

Plaintiff Mary Callis ("Callis") has filed this suit against Houston Police Officers Michael K. Sellars ("Sellars"), Martin Fite ("Fite") and L.L. Shoemaker ("Shoemaker"), Houston Police Chief, Sam Nuchia ("Nuchia"), and the City of Houston ("City") pursuant to 42 U.S.C. § 1983, alleging violations of her Fourteenth Amendment rights and pendent state law tort claims. Callis allegedly was raped by Sellars in December 1992, sexually harassed thereafter, and sexually assaulted by him in March 1993 during a police "sting" set up to secure Sellars' arrest. Pending before the Court is Shoemaker's Motion to Dismiss [Doc. # 3]; Fite's Motion to Dismiss [Doc. # 5]; Nuchia's Motions to Dismiss [Docs. # 7 and 9]; the City's Motion to Dismiss [Doc. # 11]; the City's, Nuchia's, Fite's and Shoemaker's Motion to Stay Discovery [Doc. # 29]; and the City's, Nuchia's, Fite's and Shoemaker's Motion to Strike Portions of Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss [Doc. # 38].

## I. Factual Background

Plaintiff alleges that, while driving her car on or about December 27, 1992, she was stopped by Sergeant Sellars, who allegedly told her that her vehicles tags were not "looking right," and that she had four outstanding traffic warrants. Plaintiff's Complaint, at 3. Plaintiff further alleges that Sellars asked her if she would be home that evening, and that he later stopped by to discuss the outstanding warrants. Sellars allegedly returned to Plaintiff's home at 1:00 a.m. on December 28, 1992 and, after repeatedly telling her that he did not want her to go to jail for the outstanding warrants, raped her.

▮ Sellars allegedly continued sexually harassing Plaintiff. In March 1993, Callis contacted the police and, in turn, the Internal Affairs Division of the Houston Police Department ("I.A.D."). According to Plaintiff's complaint, Defendant Shoemaker, an I.A.D. sergeant, persuaded Plaintiff that the only way to convict Sellars was to set up a meeting in which Sellars would make admissions

while being taped by I.A.D. Although the complaint does not specify how this was arranged, it seems as if Plaintiff contacted Sellars in order to propose a meeting.[1] This meeting was held at Plaintiff's home in March 1993. Surveillance was implemented by Defendants Shoemaker and Fite. Plaintiff seems to allege that Fite and another officer were hidden in Plaintiff's bedroom closet[2] in order to secure evidence against Sellars. During this so-called "sting" operation, Shoemaker and Fite were only to allow Sellars to make incriminating statements, at which point Fite was to emerge from the closet and arrest Sellars. Plaintiff alleges, however, that Shoemaker and Fite allowed Sellars to make unwanted sexual advances and to sexually assault Plaintiff before they attempted to make an arrest.[3]

## II. Defendants' Motions to Dismiss

### A. Nuchia's Motions to Dismiss

■ Nuchia moves the Court to dismiss pursuant to FED.R.CIV.P. 12(b)(5), arguing that Plaintiff's attempt at service on him was improper as a matter of law under FED. R.CIV.P. 4. Nuchia also moves to dismiss pursuant to FED.R.CIV.P. 12(b)(6), arguing that Plaintiff does not sufficiently plead the existence of a policy or custom which was the moving force behind the deprivation of Plaintiff's constitutional rights. Since Nuchia has been sued only in his official capacity, and the public entity which he allegedly represents (i.e., the City of Houston) has been joined as a defendant, there is no reason why Nuchia should continue to be a defendant in

1. According to Plaintiff, upon contacting I.A.D., "[she] was instructed to set up a meeting with Sergeant Michael K. Sellars by Officer L.L. Shoemaker." Plaintiff's Complaint, at 4–5.

2. It is unclear from the pleadings what role was played by Shoemaker and Fite in the sting. The complaint alleges that "[t]he Internal Affairs Division, led by Sergeant Martin, hid police officers in Plaintiff's bedroom in the closet in order that evidence could be procured without any difficulty." Plaintiff's Complaint, at 5. Elsewhere, Plaintiff asserts that "Officer Martin Fite was inside the bedroom or a closet whereby he could hear everything that transpired." Plaintiff's Response to Defendants' Motion to Dismiss, at 4.

3. Plaintiff does not state exactly what Sellars did. Defendants dispute Plaintiff's version of events,

this action. See Brandon v. Holt, 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985) (a judgment against a police officer in his official capacity is the same as a judgment against the public entity he represents, assuming that the public entity has received notice and an opportunity to respond). The Court therefore grants Nuchia's dismissal and will address Plaintiff's allegations concerning the City's or the Houston Police Department's alleged policies in connection with the City's Motion to Dismiss.

### B. Defendants' Rule 12(b)(6) Motions

Defendants Fite, Shoemaker and the City move the Court to dismiss this action pursuant to FED.R.CIV.P. 12(b)(6), arguing that (1) Plaintiff's claims against Defendants in their individual capacities are barred by Defendants' qualified immunity; and (2) the facts alleged by Plaintiff do not establish the City's custom, practice or policy of violating her constitutional rights, as required to prove Plaintiff's claims against Defendants in their official capacities.

■ Rule 12(b)(6) motions to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### III. Legal Analysis

### A. Plaintiff's Official Capacity Claims

■ *Plaintiff's Allegations.*—Under *Monell v. Dep't of Social Servs. of City of*

and claim that she failed to yell out as agreed, and that Shoemaker and Fite acted reasonably by making a discretionary decision to call other officers to the scene to see if she was alright. Shoemaker's Motion to Dismiss, at 7; Fite's Motion to Dismiss, at 7. However, in reviewing a Rule 12(b)(6) motion, the Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Therefore, for the purposes of the Motions to Dismiss, the Court infers that Shoemaker and Fite failed to emerge from Plaintiff's bedroom closet on cue.

*N.Y.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality sued pursuant to Section 1983 cannot be held liable for the actions of its employees on a theory of *respondeat superior*. However, municipalities may be sued for damages or for declarative and injunctive relief when execution of their policies or customs results in the deprivation of constitutional rights. *Id.* at 694, 98 S.Ct. at 2037–38; *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248 (5th Cir.1995). In order to state a claim against a municipal defendant under Section 1983, Plaintiff must sufficiently plead the existence of a policy or custom which was the "moving force" behind the deprivation of her constitutional rights. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38.[4]

Plaintiff attempts to allege several official policies in connection with the police sting that she claims resulted in the deprivation of her constitutional rights. In her Supplemental Response to Defendants' Motion to Dismiss [Doc. #37] ("Supplemental Response"),[5] Plaintiff argues that "the Defendant, Sam Nuccia [sic] ... approved and ratified the policy implemented by the Inter-

nal Affairs Officers of utilizing private individuals to further their investigation of criminals and police officers and thereby placing private citizens in danger and then failing to protect them from harm." Supplemental Response, at 7. In Plaintiff's Supplemental Response, she also alleges a "policy [implemented by Nuchia] of requiring additional proof and/or requiring private citizens to undergo additional requirements in order to file a complaint against a Houston Police Officer as opposed to private citizens."[6] *Id.* The City is charged with the same policies, the implementation of which, Plaintiff contends, "resulted in constitutional violations of the Fourteenth Amendment due process clause and equal protection clause and thereby resulted in injury to the Plaintiff. . . ." *Id.* at 8.

***Plaintiff's Due Process Claim.***—Plaintiff fails to articulate her due process claim, although she argues that a "special relationship" existed between herself and the City, the Houston Police Department ("HPD"), and I.A.D. She seems to argue that this is a

**4.** The Court recognizes that notice pleading is sufficient, and that no heightened pleading requirement is applicable. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994).

**5.** In October 1995, the Court ordered Plaintiff to submit a chart indicating which facts in the complaint supported her original claims and advising the Court whether she wished to withdraw any of her causes of action. Plaintiff then filed "Plaintiff's Memorandum in Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss," which the Court has denominated "Plaintiff's Supplemental Response to Defendant's Motions to Dismiss."

**6.** Plaintiff concedes that these policies are not spelled out in her complaint. However, the pleadings repeatedly refer to police policies which, when implemented by Defendants, resulted in the alleged deprivation of Plaintiff's constitutional rights. Plaintiff elaborated on the Police Department's allegedly unconstitutional double-standard in her original Response to Defendants' Motions to Dismiss ("Plaintiff's Response") [Doc. #17]:

> [I]t has been a long standing policy of the Houston Police Department to treat its own police officers with a different standard than one would treat a private citizen who is being

> charged with the same type of offense. The Houston Police Department gives preferential treatment in its investigation of police officers. The amount of evidence necessary by the complaining victim to bring a charge against a police officer must preponderate in a much greater quantity than one would have to produce in order for the district attorney and/or the arresting officers to press charges against a private individual. This policy has, for a long period of time, been adhered to within the Houston Police Department. The policy is not written down in a policy manual, but is adhered to on a day-to-day basis to the extent it constitutes a custom; and therefore constitutes a policy of the City of Houston, as well as, the Houston Police Department to which the Police Chief is the policy maker.

Plaintiff's Response, at 8. In support of her policy allegation, Plaintiff contends that, prior to the police sting, she took a lie detector test to prove that she was telling the truth about Sellars' raping and sexually harassing her. She contends that this was insufficient for I.A.D. to launch an investigation; instead it continued to press for a meeting between Plaintiff and Sellars. Plaintiff's Complaint, at 5. Plaintiff also alleges that I.A.D. taped conversations between herself and Sellars which demonstrated that Sellars was using his police badge to acquire sexual favors, but that this still was not sufficient evidence for Shoemaker to place Sellars under arrest. Plaintiff's Response, at 4.

substantive due process claim implicating her liberty interest. As the court explained in *Sherrell v. City of Longview*, 683 F.Supp. 1108 (E.D.Tex.1987),

> plaintiff has pleaded sufficient facts to claim that a 'special relationship' may have been created between himself and the defendants [municipal police department and individual officers] by their acts, thus imposing upon the defendants an affirmative duty to protect the plaintiff from [an abusive police officer]. Their failure or refusal to protect him, if proven, would violate the plaintiff's Fourteenth Amendment's liberty interest. (citations omitted).

*Sherrell*, 683 F.Supp. at 1113.

In *Sherrell*, the plaintiff was a young child who was assaulted and seriously injured by a police officer who had abused the boy on two previous occasions. Although complaints had been made respecting the earlier incidents, the police refused to arrest the officer, allegedly pursuant to a "policy of dealing with police officers involved in domestic violence in a manner other than normal citizens were dealt with, that being, not arresting them and assigning them for counseling." *Id.* at 1111. In finding that a "special relationship" may have existed between the City, the Police Department and young boy, the court stated:

> The state by its acts may … create a 'special relationship' with a specific individual, that imposes upon it a constitutional duty to care for and protect the individual from known harms…. A 'special relationship' and hence a duty to protect may exist where the police have knowledge of specific threats of violence to an individual victim by a known attacker, yet refuse to act.

*Id.* at 1113.

The basis for the due process claim in *Sherrell* was the repeated refusal of the police to arrest an officer whom the department knew had abused a young boy. Although Plaintiff argues that *Sherrell* is analogous to her case and, consequently, that the City and the Police Department had a duty to protect her from a known "sexual assaulter and abuser," Plaintiff ignores a crucial distinction between the cases. In *Sherrell*, the police refused to act in response to complaints of child abuse, leaving the officer free to assault and injure the plaintiff. There was also an underlying policy allegation whereby officers suspected of abuse were not arrested but instead were given counseling.

■ In the case at bar, unlike *Sherrell*, there was no refusal to act by the Police Department, and no alleged policy of failing to arrest errant officers. On the contrary, upon learning of Plaintiff's allegations against Sellars, I.A.D. proposed a police sting precisely so that sufficient evidence would be obtained not only to arrest him but also to obtain a conviction for a serious crime. Although Plaintiff complains about their choice of investigative techniques, Defendants were clearly trying to protect Plaintiff from future harassment. Moreover, if no I.A.D. investigation had been done, Plaintiff's allegations indicate that Sellars, who had been harassing Plaintiff over a three month period, would have continued to pursue her. In contrast to the unwitting young plaintiff in *Sherrell*, Plaintiff, a mature adult, therefore voluntarily participated in the police sting.

Although Plaintiff did not consent to the sexual contact which allegedly occurred, it cannot be said that a "special relationship" existed between Plaintiff, the Houston Police Department and the City. Not only is Plaintiff's case distinguishable from *Sherrell*, as discussed above, but *Sherrell*, decided two years before the Supreme Court's decision in *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), is not the law of the Fifth Circuit.

In *DeShaney*, state officials had many indications that a child's father was abusing him, and had even taken temporary custody of him while investigating. The father later severely injured the child. The Court rejected the argument that the state, by having undertaken to protect the child from danger at his father's hands, created a special relationship between the state and the child sufficient to give rise to an affirmative duty to protect. While recognizing that, "in certain limited circumstances, the Constitution imposes upon the State affirmative duties of

care with respect to particular individuals," *DeShaney*, 489 U.S. at 198, 109 S.Ct. at 1004, the Court held that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004. Thus, no duty of care was owed the injured plaintiff because, "[i]n the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Id.* at 200, 109 S.Ct. at 1006.[7]

■ Since *DeShaney* was decided, the Fifth Circuit has "followed its language strictly and ... held consistently that only when the state, by its affirmative exercise of power, has custody over an individual *involuntarily or against his will* does a 'special relationship' exist between the individual and the state." *Walton v. Alexander*, 44 F.3d 1297, 1303 (5th Cir.1995) (citations omitted). "If the person claiming the right of state protection is *voluntarily* within the care or custody of a state agency, he has no substantive due process right to the state's protection from harm inflicted by third party non-state actors." *Id.* at 1304. Thus, as construed by the Fifth Circuit, "DeShaney stands for the proposition that the state creates a 'special relationship' with a person only when the person is involuntarily taken into state custody and held against his will

through the affirmative power of the state; otherwise, the state has no duty arising under the Constitution to protect its citizens against harm by private actors." *Id.*

Plaintiff argues that she was in the custody of the HPD during the sting and that, as a result, a special relationship was created whereby Defendants had an affirmative duty to protect her from sexual assault. Plaintiff's Response, at 15. However, by her own admission, Plaintiff voluntarily participated in the police sting and, therefore, it cannot be said that she was taken into police custody against her will.

■ Plaintiff's willful relinquishment of a small fraction of liberty simply is not comparable to that measure of almost total deprivation experienced by a prisoner or involuntarily committed prisoner. *See Walton*, 44 F.3d at 1305 (no special relationship where resident student voluntarily attended state school for the deaf and was twice sexually molested by a fellow classmate). Plaintiff agreed to participate on terms that she found satisfactory and, at any moment, could have quit or called off the sting. *See de Jesus Benavides v. Santos*, 883 F.2d 385 (5th Cir. 1989) (no affirmative duty to protect prison guards injured during escape attempt because guards under no compulsion to submit to unsatisfactory working conditions and could quit whenever they chose). Plaintiff enjoyed no special relationship with the City or HPD arising from her voluntary participation in the police sting, and Defendants had no affirmative duty to protect her from private harm.[8] Therefore, the Court finds

---

**7.** Citing Fourteenth as well as Eighth Amendment case law, the Court found that the duty of care generally arises when the state deprives a citizen of his liberty so that he is unable to care for himself, *e.g.*, when a prisoner is incarcerated, or a patient involuntarily committed to a mental institution. The duty of care is triggered in these contexts because, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199–200, 109 S.Ct. at 1005. *See also Hare v. City of Corinth*, 74 F.3d 633, 644–45, (5th Cir.1996) (en banc), *quoting DeShaney*, 489 U.S. at 200, 109 S.Ct. at 1005 ("[w]hether the State's obligation is cast in terms of a duty to provide medical care or protection from harm, its ulti-

mate constitutional duty is 'to assume some responsibility for [the] safety and general well-being' of persons whose state-occasioned confinement renders them unable to fend for themselves").

**8.** Plaintiff claims that Sellars acted under color of state law when he sexually harassed her, Plaintiff's Response, at 1–2, which presumably includes Plaintiff's alleged sexual assault during the sting. However, "[t]he special relationship doctrine is properly invoked in cases involving harms inflicted by third parties, and it is not applicable when it is the conduct of a state actor that has allegedly infringed a person's constitutional rights." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 529 (5th Cir.1994). Therefore,

that Plaintiff has failed to state a claim against the City for violation of the due process clause, and the City's Motion to Dismiss is granted with respect to Plaintiff's "special relationship" claim.

*Plaintiff's Equal Protection Claims.*— Plaintiff argues that I.A.D. violated the equal protection clause of the Fourteenth Amendment. Primarily, Plaintiff seems to argue in her discussion of *Sherrell v. City of Longview* that I.A.D.'s alleged policy of requiring additional proof to arrest police officers (as opposed to private citizens) is a violation of the equal protection clause.

In his Section 1983 suit against the City, the plaintiff in *Sherrell* alleged that he was the victim of a departmental policy providing favored treatment to police officers accused of domestic violence. Characterizing the plaintiff's claim as a "Fourteenth Amendment deprivation," the court found that he had alleged the existence of a discriminatory policy that, if proven, could support liability under Section 1983:

> As the U.S. Court of Appeals for the Seventh Circuit has stated, '[d]iscrimination in providing protection against private violence would of course violate the *equal protection clause* of the Fourteenth Amendment.' *Bowers* [*v. DeVito*, 686 F.2d 616 (7th Cir.1982)]. Acts of omission in providing police protection, as well as acts of commission, may be discriminatory under the Fourteenth Amendment. *Bartalone* [*v. Berrien County*, 643 F.Supp. 574, 576 (W.D.Mich.1986)].

*Sherrell*, 683 F.Supp. at 1112 (emphasis added).

▪ The Court finds this reliance on *Sherrell* for an equal protection argument unpersuasive. In *Sherrell*, as noted above, the police department refused to take action against an officer repeatedly accused of abusing the plaintiff and, as a result, the boy was eventually seriously injured. Because of an allegedly unconstitutional policy (not arresting police officers accused of domestic violence), plaintiff in *Sherrell* was not adequately protected by (or from) the police. The

crucial distinction between *Sherrell* and the case at bar is that HPD reacted to Plaintiff's complaints about Sellars, and set up a sting operation to secure Sellars' arrest and conviction. HPD did not discriminate against Plaintiff either by failing to provide protection, or by refusing to take action against Sellars.

Plaintiff alleges no facts to support her subjective view that there is favored treatment as to arrests or prosecutions of police officers accused of crimes. Indeed, the Court will not second-guess the police or experienced investigators on the quantum of evidence needed prior to arrest or to obtain convictions of police officers—or other citizens. Therefore, the Court finds that Plaintiff has failed to state a claim against the City for the implementation or maintenance of policies which violate the equal protection clause.

▪ It appears that Plaintiff, alternatively, may be attempting to assert an equal protection argument in connection with Plaintiff's membership in a protected class, namely "black females." This attempt must fail. To succeed in an equal protection claim, a plaintiff must prove that she was the victim of purposeful discrimination, either because of her membership in a protected class, such as a racial minority, or due to an irrational or arbitrary state classification unrelated to a legitimate state objective, *Sherrell*, 683 F.Supp. at 1116, *citing Stern v. Tarrant County Hosp. Dist.*, 778 F.2d 1052 (5th Cir. 1985), *cert. denied*, 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986). Discriminatory purpose or intent is generally required in equal protection cases. Contrary to *Sherrell*, Plaintiff has failed adequately to allege an equal protection claim. Plaintiff's equal protection argument centers, not on an irrational state classification, as in *Sherrell*, but on her alleged membership in a protected class. In Plaintiff's Supplemental Response, she states that she "is part of a protective [sic] class in that she is a black female," and that "[f]acts have been pled that Plaintiff is a black fe-

---

Plaintiff may only invoke this doctrine if she denominates Sellars a private actor. Even then, as explained above, her argument is unavailing,

because of her voluntary participation in the sting.

male." However, this is insufficient to state an equal protection claim against the City since there are *no* allegations of wrongdoing by HPD with respect to its treatment of black females. The pleadings refer to race and gender only in connection with Sellars, and not the City or individual Defendants moving for dismissal.[9]

Therefore, the Court finds that Plaintiff has failed to state a claim against the City or Defendants Shoemaker and Fite for violation of the equal protection clause. Defendants' Motion to Dismiss is granted with respect to all equal protection claims.

***Plaintiff's Failure to Supervise Claims.***—Plaintiff further alleges that Nuchia failed to instruct, supervise, or control and discipline Sellars, and that Nuchia should have known of Sellars' illegal acts and misuse of official power which potentially could harm private citizens and did, in fact, harm Plaintiff.[10] Plaintiff further alleges without elaboration that the City's and Nuchia's "deliberate indifference" to her rights resulted in a violation of the Fourteenth Amendment.

■ A municipality is responsible in certain circumstances under Section 1983 for a failure to train its employees that results in the violation of a plaintiff's constitutional rights. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994), *citing City of Canton, Ohio v. Harris*, 489 U.S. 378, 381, 388, 109 S.Ct. 1197, 1200–01, 1204, 103 L.Ed.2d 412 (1989). The proper standard of local governmental liability for failure to train is "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 398, 109 S.Ct. at 1209–10. Such liability depends on a showing of (1) a "deliberately indifferent" policy of training that (2) was the "closely related" cause of the violation of the

plaintiff's federally protected rights. *Id.* at 390–91, 109 S.Ct. at 1205–06.

■ Under the Supreme Court's decision in *City of Canton*, Plaintiff's allegations are insufficient to state a claim against the City for Nuchia's failure to train or supervise Sellars. Despite the leeway of notice pleading, a plaintiff, must, in "failure to train" cases, plead more than conclusory allegations. 1 Sheldon H. Nahmod, Civil Rights and Civil Liberties: The Law of Section 1983 § 6.14, at 481 (3rd ed. 1991); *see also Revene v. Charles County Comm'rs*, 882 F.2d 870, 875 (4th Cir.1989) (under *City of Canton*, pleadings without supporting facts suggesting any specific deficiencies in training for off-duty conduct were insufficient to state a claim under Section 1983).

Plaintiff's allegations are simply conclusory. She alleges no facts to suggest specific deficiencies in supervision or training. Plaintiff's assertions that Nuchia failed to instruct, supervise or control Sellars, and that Nuchia should have known of Sellars' illegal acts, and potentially harmful misuse of official power, are nothing more than personal unsupported opinions. Moreover, Plaintiff has not explained how Nuchia's alleged failure to supervise demonstrates "deliberate indifference" by the City to its citizens' constitutional rights. Nor has Plaintiff alleged that the violation of her constitutional rights was *caused* by a deliberately indifferent policy of police training, as required under *City of Canton*. Nothing in the pleadings suggests that Nuchia's deficient supervision caused Sellars either to rape Callis in 1992 or to continue to sexually harass her either before or during the course of the police sting in 1993. Therefore, the City's Motion to Dismiss is granted as to Nuchia's alleged failure to instruct or supervise Sellars.

Plaintiff also suggests that Nuchia's conscious indifference to Sellars' misconduct re-

---

**9.** Plaintiff's only race-based contention is that "[d]ue to the fact that [she] was black and female, the Defendant, Sellars, knew that he could prey upon her knowing that she was more susceptible to his threats and coercion. As a result of said facts, the Defendant, Michael K. Sellars, violated section 42 U.S.C. Section 1981 concerning racial discrimination as well as, [sic] and 42 U.S.C. Section 2000(e) and 42 U.S.C. Section

1983." Plaintiff's Complaint, at 11. Plaintiff has recently abandoned her Section 1981 and Section 2000(e) claims against all Defendants.

**10.** This claim is distinct from Plaintiff's "failure to supervise" claim alleged against Fite and Shoemaker in their individual capacities. *See infra* at 518–519.

flects a deliberate police policy for which the City is liable under Section 1983. Plaintiff cites case law for the proposition that a police department's repeated refusal to arrest an officer accused of misconduct indicates deliberate indifference sufficient to raise an inference of official policy. *See Harris v. City of Pagedale,* 821 F.2d 499 (8th Cir.1987), *cert. denied,* 484 U.S. 986, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987); *Sherrell v. City of Longview,* 683 F.Supp. 1108 (E.D.Tex.1987).

■ Plaintiff alleges in her complaint that the HPD was previously aware of Sellars' "past history" and, in her original Response to Defendants' Motions to Dismiss, that "the City of Houston is obviously holding all of the information pertaining to the number of sexual misconduct claims made against police officers over the past ten (10) years." These allegations are wholly conclusory and thus insufficient to raise an inference of a municipal policy of deliberate indifference.

Most importantly, Plaintiff's case is fundamentally different from *Harris* and *Sherrell.* The HPD, when informed of Sellars' alleged mistreatment of Plaintiff, acted promptly: it commenced a well recognized technique, an I.A.D. sting designed to catch a suspected criminal red-handed. Plaintiff's dissatisfaction with execution of the sting does not establish that the HPD was deliberately indifferent to Sellars' or other officers' misconduct. On the contrary, I.A.D.'s reaction to Plaintiff's allegations suggests that the HPD was, in fact, responsive to citizens' complaints rather than indifferent to allegedly abusive conduct.

Therefore, Plaintiff has failed to state a claim against the City for deliberate indifference to misconduct, and the City's Motion to Dismiss is granted with respect to this allegation.

### B. *Plaintiff's Individual Capacity Claims*

■ Even if the policies alleged by Plaintiff indirectly violated her constitutional rights, they were not the cause-in-fact of her assault by Sellars during the police sting.[11] More closely related to Plaintiff's injury was the alleged failure of Defendants Shoemaker and Fite to arrest Sellars once incriminating statements were made and before sexual contact had occurred. Therefore, the Court must consider whether Plaintiff has stated a claim against Shoemaker and Fite in their individual capacities, and whether qualified immunity protects these officers from suit.

■ Qualified immunity shields government officials performing discretionary functions from liability for suits brought against them in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir.1995). In examining an official's claim of qualified immunity, courts follow a two-step process. The first step is to ascertain whether the plaintiff alleges "the violation of a clearly established constitutional right." *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792, 114 L.Ed.2d 277 (1991). The second step is to decide whether the defendant's conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident. *Gunaca v. State of Tex.,* 65 F.3d 467, 473–74 (5th Cir.1995); *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir. 1992). Even if an official's conduct violated a clearly established constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable. *Salas v. Carpenter,* 980 F.2d at 310. Whether such conduct violated clearly established law, so as to preclude the application of qualified immunity, is

---

11. Once an official policy or custom is identified, as a condition precedent for local government liability, there must be a causal relationship between that policy or custom and the plaintiff's constitutional deprivation. 1 NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION: THE LAW OF SECTION 1983 § 6.07, at 423; *see also Rheuark v. Shaw,* 628 F.2d 297 (5th Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981) (county's official policy of attempting to curtail court reporter budget was not a cause in fact of the delay in preparing plaintiff's statement of fact for appeal; rather, it was the district judge who caused the delay because he did not appoint additional court reporters to eliminate the backlog as he could have).

essentially a legal question. *White v. Taylor,* 959 F.2d 539, 544 (5th Cir.1992), citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985).

■ The qualified immunity defense involves a shifting burden of proof. *Salas v. Carpenter,* 980 F.2d at 306. The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. *Id.* The burden then shifts to the plaintiff to rebut this defense by establishing that the allegedly wrongful conduct violated clearly established law. *Id.*

■ In *Elliott v. Perez,* 751 F.2d 1472 (5th Cir.1985), the Fifth Circuit required that complaints against government officials in Section 1983 cases state with factual detail and particularity the basis for the plaintiff's claim, which necessarily includes why the defendant-official cannot maintain the defense of immunity. In later cases, the Fifth Circuit extended this rule to complaints against municipal corporations asserting liability under Section 1983. *See, e.g., Palmer v. City of San Antonio,* 810 F.2d 514 (5th Cir.1987). Although, in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court abolished this heightened pleading standard for claims against municipalities, it specifically reserved the question of whether official immunity jurisprudence would require a heightened pleading in cases involving individual government officials. *Leatherman,* 507 U.S. at 165, 113 S.Ct. at 1162. In several recent decisions, the Fifth Circuit has found that its heightened pleading requirement survived the *Leatherman* decision, at least as to Section 1983 claims involving government officials. In *Schultea v. Wood,* 47 F.3d 1427 (5th Cir.1995), for example, the Fifth Circuit stated that "nothing in *Leatherman* disturbed our holding in *Elliott v. Perez,* 751 F.2d 1472 (5th Cir.1985), that complaints in such cases be pled with 'factual detail and particularity.'" *Id.* at 1429. Although a plaintiff need no longer anticipate the affirmative defense of immunity in his or her complaint, *Schultea v. Wood,* 47 F.3d at 1429, complaints must plead more than conclusory statements and bald allegations. Specifically focusing on the conduct which caused them injury, Plaintiffs must allege facts that, if proven, would show that a public official violated their statutory or constitutional rights. *See Wicks v. Miss. State Employment Serv.,* 41 F.3d 991, 995 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995).

Plaintiff alleges several Fourteenth Amendment violations independent of the policy allegations against the City with respect to Defendants Shoemaker and Fite. The Court finds that Plaintiff has not satisfied her pleading burden.

■ In Section 1983 suits alleging a violation of the due process clause of the Fourteenth Amendment, plaintiffs must (1) assert a protected "liberty or property" interest and (2) show that they were deprived of that interest under color of state law. *Doe v. Rains Indep. Sch. Dist.,* 66 F.3d 1402, 1406 (5th Cir.1995). As described below, Plaintiff asserts a liberty interest in both bodily integrity and protective services, but fails to allege facts adequately supporting her claims that Defendants deprived her of constitutional rights under color of state law. Plaintiff's Complaint, at 8, 9.

***Bodily Integrity Claim.***—Plaintiff alleges that, during the police sting, the officers allowed Sellars to remove her clothing and make sexual contact before attempting to arrest Sellars, despite their prior assurances to Plaintiff that no physical contact would occur. Assuming that Defendants knew that Plaintiff was being assaulted,[12] this may constitute a violation of her liberty interest under the due process clause of the Fourteenth Amendment. *See Doe v. Rains,* 66 F.3d at 1406 (finding Plaintiff's allegations sufficient to establish that she suffered an actionable deprivation of her liberty interest in freedom from sexual abuse by persons wielding state

---

12. Plaintiff alleges that Shoemaker and Fite were listening to an audio transmission of her meeting with Sellars and therefore knew that Plaintiff was being assaulted. She does not allege anything about what was said by Sellars or what words she uttered that Defendants were supposed to act on. Nor is any detail alleged as to what actually occurred during the sting.

authority, but holding that named defendant was not such a person); *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 445 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994) (holding that school children have a liberty interest in their bodily integrity that is protected by the due process clause of the Fourteenth Amendment and that sexual abuse by a school employee violates that right); *Shillingford v. Holmes,* 634 F.2d 263 (5th Cir.1981) (holding that the right to be free of state-occasioned damage to person's bodily integrity is protected by the Fourteenth Amendment guarantee of due process).

The Court, in considering a motion to dismiss, must deem all Plaintiffs' allegations to be true. Although she agreed to participate in the sting, Plaintiff avers that she did not consent to sexual contact. Plaintiff's allegations are tantamount to the contention that Shoemaker and Fite acted in bad faith, because allegedly they intentionally ignored Plaintiff's signal and deliberately allowed Sellars to sexually assault her.

Shoemaker and Fite have adequately pled the defense of qualified immunity, alleging that they acted in good faith, within the course and scope of their employment when carrying out the police sting. Shoemaker's Original Answer, ¶ 53; Fite's Original Answer, ¶ 53. Once Defendants' burden is satisfied, the burden then shifts to Plaintiff to rebut this defense by establishing that the allegedly wrongful conduct violated clearly established law. *Salas v. Carpenter,* 980 F.2d at 306.

■ The Court concludes that Plaintiff has not adequately met her burden of establishing that the officers' allegedly wrongful conduct violated clearly established law. Indeed, it is unclear what actions or omissions by Defendants Shoemaker and Fite, respectively, violated Plaintiff's right to bodily integrity. Neither officer had any physical contact with her during the sting and neither had "legal control" in the typical sense over Sellars. *But see Doe v. Rains,* 66 F.3d at

1414 (5th Cir.1995). The Court, therefore, has serious concerns as to whether Plaintiff can establish the requisite elements of this claim.[13] However, applying *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the Court is not convinced that Plaintiff cannot state a claim against Shoemaker or Fite for violation of a constitutional right to bodily integrity. Defendants' Motion to Dismiss therefore is DENIED without prejudice at this time with respect to Plaintiff's bodily integrity claim. Plaintiff must replead this claim with specificity promptly. Thereafter, limited discovery may be undertaken on this claim.

***Failure to Supervise I.A.D. Officers.***— Plaintiff alleges that, by failing to supervise the individual officers executing the sting, Shoemaker and Fite acted with deliberate indifference to the violation of her constitutional rights. Plaintiff's Complaint, at 13. Supervisory officials may be liable under Section 1983 when they breach a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury. *Doe v. Rains,* 66 F.3d at 1412.

■ The Fifth Circuit has established a three-part test for determining whether a supervisory official can be held liable for the conduct of a subordinate. The plaintiff must show that: (1) the supervisor failed to supervise or train the subordinate, (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference. *Id.* (citations omitted). To demonstrate deliberate indifference on the part of an official, a plaintiff must show the following: (1) an unusually serious risk of harm, (2) defendant's actual knowledge of (or at least willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk. *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 531 (5th Cir.1994), *citing Manarite v. City of Springfield,* 957 F.2d 953, 956 (1st Cir.), *cert. denied,* 506 U.S. 837,

---

**13.** This analysis does not apply to Sellars. In order to incur liability under Section 1983, of course, Sellars must be deemed a state actor. The Court does not reach this issue in ruling on Defendants' motions to dismiss. Even if appropriate, it would be impossible to do so because of the complete absence of facts surrounding Sellars' alleged post-rape harassment of Plaintiff.

113 S.Ct. 113, 121 L.Ed.2d 70 (1992). Isolated incidents of subordinate misconduct, in the absence of actual supervisory knowledge, are insufficient to establish supervisory liability. 1 NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES: THE LAW OF SECTION 1983 § 3.23, at 248.

■ Plaintiff has totally failed to allege facts on which a claim against Shoemaker and Fite for failure to supervise may be granted. The totality of Plaintiff's allegations are that Shoemaker and Fite failed to intervene in the sting in a timely manner. This amounts to an isolated instance of negligence or error of judgment which does not rise to the level of deliberate indifference. Moreover, there is nothing comprehensible in any of her various submissions as to the roles of any subordinate officers, respectively, and how their conduct violated Plaintiff's constitutional rights.[14] Plaintiff has not stated a claim against Shoemaker and Fite for failure to supervise their subordinates. Defendants' Motion to Dismiss therefore is GRANTED as to this claim.

***Failure to Provide Police Protection Claim.***—Plaintiff contends that, by subjecting her to dangerous conditions to which—but for state action—she would not have been exposed, Defendants violated her right to substantive due process, specifically, the right to protective services. Plaintiff explains that Shoemaker and Fite placed her in danger by conducting the police sting and increased her vulnerability to that danger by staging it in a location where all avenues of escape or rescue (other than with the assistance of the officers themselves) were cut off. Plaintiff also argues that she was in the custody of the HPD during the sting and that, as a result, a special relationship was created whereby Defendants had an affirmative duty to protect her. Plaintiff's Response, at 15.

Plaintiff relies on a line of cases (similar to those discussed above) that holds that the due process clause imposes a duty on state actors to protect or care for citizens in two situations: first, in custodial settings in which the state has limited the individuals' ability to care for themselves; and second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced. *See, e.g., Gregory v. City of Rogers, Ark.,* 974 F.2d 1006, 1010 (8th Cir.1992), *cert. denied,* 507 U.S. 913, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993).

■ ***"Special Relationship" Claim.***—Although the pleadings are somewhat unclear, Plaintiff's "special relationship" claim seems to encompass Shoemaker and Fite as well as the City and HPD. As discussed *supra* at 511–514, a special relationship exists only when the state, by its affirmative exercise of power, has custody over an individual involuntarily or against his will. *Walton v. Alexander,* 44 F.3d at 1303. Plaintiff was clearly not in custody against her will because she voluntarily agreed to participate in the police sting. This is the opposite of "custody," where it is the official's decision to restrict a person's movement to a confined location and not the decision of the person confined. Therefore, Plaintiff has failed to state a claim for violation of the right to protective services when in coercive state custody.

***State–Created Danger Claim.***—Plaintiff argues under the second prong of *Gregory* that Defendants were obligated by the due process clause to protect her from Sellars' advances, because they affirmatively placed her in a position of danger which she would not otherwise have faced.

■ Even absent a special relationship, " 'a constitutional duty to protect an individual against private violence may exist in a noncustodial setting if the state has taken affirmative action which increases the individual's danger of, or vulnerability to, such violence beyond the level it would have been at absent state action.' " *Salas v. Carpenter,* 980 F.2d 299, 309 (5th Cir.1990), *quoting Freeman v. Ferguson,* 911 F.2d 52, 55 (8th Cir.1990). Pursuant to a "state-created danger" theory, the due process clause has been held to render state actors accountable for the fore-

---

**14.** The Court is confused by this failure to supervise claim, since it appears from Plaintiff's complaint that Fite, if not Shoemaker, was in the closet during the sting and therefore it is unclear who was not properly supervised.

seeable injuries that result from their conduct, whether or not the victim was in formal state custody. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995).[15] Significantly, no Fifth Circuit case has yet predicated relief on this theory. *Id.; Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d at 530.

In *Leffall*, the Fifth Circuit noted that "even if we were to recognize a constitutional violation based on a state-created danger, the conduct by the state would have to be so extreme as to 'shock[ ] the conscience.'" *Leffall*, 28 F.3d at 521, *quoting Salas v. Carpenter*, 980 F.2d at 309. In *Johnson v. Dallas Indep. Sch. Dist.*, the Fifth Circuit distilled from other circuits the elements that constitute the state-created danger doctrine: (1) the environment created by the state actors must be dangerous; (2) the state actors must know that it is dangerous; and (3) the state actors must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur. *Johnson*, 38 F.3d at 201. "Put otherwise, the defendants must have been at least deliberately indifferent to the plight of the plaintiff." *Id.* Although the standard for constitutional culpability may be unclear,[16] at a minimum, Plaintiff must establish that Defendants were deliberately indifferent to her welfare.

Even if the state-created danger theory is constitutionally sound, Plaintiff has not met her pleading burden under *Johnson*, because the danger to which she was exposed during the sting was not fundamentally state-created by the actions of Shoemaker and Fite. The allegations in Plaintiff's complaint suggest that she agreed to the sting at least in part because she feared that Sellars' harassing conduct would continue, regardless of intervention by I.A.D. Thus, as a practical matter, it does not appear that it was Shoemaker and Fite who put her in a position in March 1993 materially different from that which she otherwise would have faced. In any event, Plaintiff's case is distinguishable from those finding a duty to protect against state-created danger, because the purpose of the sting was to arrest and convict Sellars and thereby to protect Plaintiff from future harm. By agreeing to participate in the sting and to call Sellars as part of that process, Plaintiff was partially responsible for creating the danger to which she was exposed. Therefore, it cannot be said that these Defendants were deliberately indifferent to the violation of Plaintiff's constitutional rights.

Unlike the state-created danger cases, this is not a case in which the state abandoned the victim in a highly dangerous environment, or decided to conduct an undercover investigation without regard for the safety of the participants. *See Leffall*, 28 F.3d at 531. Defendants Shoemaker and Fite allegedly used surveillance equipment during the sting not only to secure evidence against Sellars, but to permit the officers to monitor his actions, and to intercede and arrest him before sexual contact had occurred. The use of measures designed to protect Plaintiff belies an inference of deliberate indifference. *See Johnson*, 38 F.3d at 202 (it may not be inferred that the conduct of the defendants rose to the level of deliberate indifference even if the deployment of security measures was haphazard or negligent). Therefore, Plaintiff's pleadings fall short of the demanding standard for constitutional liability. *Id.* at 201.

Because the pleadings disclose that Defendants were not deliberately indifferent to Plaintiff's constitutional rights, Defendants' Motion to Dismiss is granted as to Plaintiff's state-created danger claim.

---

**15.** *See, e.g., Wood v. Ostrander*, 879 F.2d 583, 588 (9th Cir.1989), *cert. denied*, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990) (by arresting driver and abandoning female passenger in high crime area in the middle of the night, trooper created danger that passenger would be assaulted and thereby triggered her due process right to protective services); *White v. Rochford*, 592 F.2d 381, 382–83 (7th Cir.1979) (minor plaintiffs stated a claim under Section 1983 when they alleged that police officers had arrested their uncle and left them unattended in a car on a busy roadside).

**16.** In *Leffall*, the Fifth Circuit noted that "deliberate indifference" is perhaps a lesser standard than "conduct so extreme as to shock the conscience." *Leffall*, 28 F.3d at 531.

*Officers' Objective Reasonableness.*— Shoemaker and Fite argue that they acted reasonably and within the scope of their discretionary authority while carrying out the police sting and that, even if Plaintiff's constitutional rights were violated, they are shielded from suit by qualified immunity. For the reasons stated above, the Court agrees as to all claims except her claim of violation of the right to bodily integrity, where Plaintiff's theory still is unclear. As to the bodily integrity claim, however, the Court cannot yet determine whether Defendants' conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident. *Gunaca v. State of Tex.*, 65 F.3d at 473–74; *Salas v. Carpenter*, 980 F.2d at 305–306. The Court, for instance, cannot discern from the pleadings what signal was to be used, whether it was in fact given, the purpose of the surveillance equipment, the length of time Sellars' unexpected intrusion took, or the invasiveness of Sellars' conduct during the sting. Therefore, as to Shoemaker's and Fite's objective reasonableness concerning Plaintiff's bodily integrity claim, the qualified immunity determination cannot be made upon the pleadings alone, and Plaintiff must replead this claim as discussed *supra* at 517–518. *See also Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995) (preceding consideration of a motion to dismiss on grounds of qualified immunity, a court may in its discretion require a plaintiff to file a particularized reply to a qualified immunity defense).

Defendants Shoemaker and Fite's Motion to Dismiss on qualified immunity grounds, therefore, is granted except to the extent of Plaintiff's bodily injury claim, as to which that motion is denied without prejudice.

### C. *Plaintiff's State Law Claims*

■ *Negligence.*—Plaintiff first alleges negligence claims under the Texas Tort Claims Act against the City, Nuchia, Shoemaker and Fite. Under Texas law, these are all claims against the City insofar as the individuals were employees acting within the scope of their authority when they allegedly committed the torts. Tex.Civ.Prac. & Rem. Code Ann. § 101.021 (Vernon 1986). Therefore, Plaintiff's negligence claims against the individual Defendants Shoemaker and Fite are dismissed.

■ To maintain a cause of action against the City, Plaintiff must plead and pursue her cause of action under the express terms of the Texas Tort Claims Act. *Wilkins v. State*, 716 S.W.2d 96, 98 (Tex.App.—Waco 1986, writ ref'd n.r.e.) Thus, Plaintiff must plead that an employee's use of a motor-driven vehicle or motor-driven equipment or the use or condition of tangible or personal property proximately caused her injury. Tex.Civ. Prac. & Rem.Code Ann. § 101.021 (Vernon 1986).[17]

Plaintiff's allegations are merely that "negligent implementation of the policies of the Internal Affairs Division constituted a condition concerning the use of personal property and real property and the officers, while in the course and scope of their duties with the City of Houston and therefore [sic], said implementation resulted in damages to the Plaintiff, Mary Callis." Plaintiff's Complaint, at 6. Elsewhere, Plaintiff asserts that "the officers used tangible personal property in the utilization of wire taps; hence, the negligent use of wire taps and the actions that flowed from said use was the proximate cause of the subsequent assault and/or contributed to the subsequent assault by Officer Sellars." Plaintiff's Response, at 5.

■ To state a claim under the Tort Claims Act for the tortious use of personal

---

17. Section 101.021 provides that

a governmental unit in the state is liable for: (1) property damage, personal injury, and death proximately caused by the wrongful act or omission of the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

property, Plaintiff must allege that the negligence which proximately caused her harm involved the use or misuse of "tangible personal property." *See Eakle v. Tex. Dep't of Human Servs.*, 815 S.W.2d 869, 872 (Tex. App.—Austin 1991, writ denied). Although "tangible" is not defined in the Act, courts have found that "tangible personal property" under the Texas Tort Claims Act refers to something that has a corporeal, concrete and palpable existence. *Univ. of Tex. Medical Branch at Galveston v. York*, 871 S.W.2d 175, 178 (Tex.1994). *See also Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32–33 (Tex.1983) (failure properly to interpret electrocardiogram graph is use of tangible personal property); *Edinburg Hosp. Auth. v. Trevino*, 904 S.W.2d 831 (Tex.App.—Corpus Christi 1995, n.w.h.) (medication, fetal heart monitor and hospital paging system are tangible personal property); *Tex. Dep't of Corrections v. Winters*, 765 S.W.2d 531, 532 (Tex.App.—Beaumont 1989, writ denied) (use of telephone system to send a telegram is use of personal property).

The Court cannot conclude on this record that Plaintiff cannot allege and prove any set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Therefore, Defendants' Motion to Dismiss is denied. Plaintiff must, however, replead this claim to clarify how "wiretaps," *i.e.*, recording devices on telephones, were used, or how Defendants' allegedly negligent use of other equipment caused Plaintiff harm.

 *Intentional Torts.*—Although in her complaint Plaintiff alleged intentional torts against Defendants as well as common law negligence claims, the intentional tort claims appear to have been abandoned.[18] In any event, Plaintiff cannot state a claim against the City for either sexual assault or failure to provide protective services under the Texas Tort Claims Act. There has been no waiver of sovereign immunity with respect to either claims "arising out of assault, battery, false imprisonment, or any other intentional tort," TEX.CIV.PRAC. & REM.CODE ANN. § 101.057 (Vernon 1986), or "the failure to provide or the method of providing police or fire protection." TEX.CIV.PRAC. & REM.CODE ANN. § 101.055 (Vernon 1986).[19]

## IV. Non–Dispositive Motions

The City's, Nuchia's, Shoemaker's and Fite's Motion to Stay Discovery [Doc. # 29] pending disposition of the immunities issues is **DENIED** in part and **GRANTED** in part. Limited discovery on the merits of Plaintiff's bodily injury and Texas Tort Claims Act claim as defined above should proceed immediately *after* Plaintiff files her amended complaint in accordance with this opinion. The balance of discovery, *e.g.*, on damages and causation, may not be conducted until after the Court addresses Defendants' qualified immunity arguments on Plaintiff's remaining claims. Defendants are instructed to file a motion for summary judgment within sixty (60) days of the date of this Order, if they intend to pursue these contentions.

The City's, Nuchia's, Shoemaker's and Fite's Motion to Strike Portions of Plaintiff's Memorandum in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss Filed October 27, 1995 [Doc. # 38] is **DENIED**. Although the Court considered the additional case law that Plaintiff included in this document, matters stated in it have not been considered an amended complaint.

## V. Conclusion

For the reasons state above, it is hereby **ORDERED** that

---

18. See Plaintiff's Summary of Claims prepared by Plaintiff pursuant to Court order in October 1995, which lists only negligence in the category of state law claims alleged against the City, Nuchia, Shoemaker and Fite. The Court makes no findings as to the sufficiency of Plaintiff's intentional tort claims against Sellars, *i.e.*, rape, sexual assault, battery and intentional infliction of emotional distress.

19. The government is immune from liability if the negligence which causes the injury lies in the formulation of a policy, such as determination of a method of police protection. However, if an officer acts negligently in carrying out that policy, government liability may exist under the Tort Claims Act. *State v. Terrell*, 588 S.W.2d 784, 788 (Tex.1979).

1. Shoemaker's Motion to Dismiss [Doc. #3] is **GRANTED IN PART and DENIED IN PART;**

2. Fite's Motion to Dismiss [Doc. #5] is **GRANTED IN PART and DENIED IN PART;**

3. Nuchia's Rule 12(b)(6) Motion [Doc. #7] is **GRANTED;**

4. Nuchia's Rule 12(b)(5) Motion [Doc. #9] is **DISMISSED AS MOOT;**

5. The City's Motion to Dismiss [Doc. #11] is **GRANTED IN PART and DENIED IN PART;**

6. The City's, Nuchia's, Shoemaker's and Fite's Motion to Stay Discovery [Doc. #.29] is **DENIED** in part and **GRANTED** in part. Limited discovery on the liability aspect of her surviving claims may proceed after Plaintiff has filed an amended complaint with respect to her claims against Defendants Shoemaker and Fite for violation of her right to bodily integrity and tortious use of personal property.

7. On or before March 11, 1996, Plaintiff must file an amended complaint in which she repleads her sole surviving Section 1983 claim (violation of her right to bodily integrity) against Shoemaker and Fite in their individual capacities and her Texas Tort Claims Act claim, pleading with specificity the alleged wrongful conduct of each Defendant separately. All claims must be pled in short numbered paragraphs and in accordance with FED.R.CIV.P. 8(a). The Section 1983 claim must meet the Fifth Circuit's heightened pleading standard in cases involving government officials, i.e., it must be pled with "factual detail and particularity." See, e.g., Schultea v. Wood, 47 F.3d 1427 (5th Cir. 1995). In repleading these claims, Plaintiff must address the factual deficiencies of the original Complaint that are identified in this Memorandum and Order. Plaintiff's failure timely and properly to replead any of the claims on which leave has been granted will result in dismissal with prejudice of those claims. Defendants must answer or respond to Plaintiff's Amended Complaint within twenty (20) days from the date the Amended Complaint is filed.

8. Defendants may file a motion for summary judgment within sixty (60) days of the date of this Order, but, if they do so, they must file briefs addressing each Defendant separately, with specific reference to portions of the Amended Complaint or other matters of record on which they rely. Defendants Shoemaker and Fite may not submit identical briefs unless the factual allegations concerning the two officers are identical. Defendants must also base their qualified immunity arguments on current Fifth Circuit case law, specifically Schultea v. Wood, and other recent authorities.

9. The City's, Nuchia's, Shoemaker's and Fite's Motion to Strike Portions of Plaintiff's Memorandum in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss Filed October 27, 1995 [Doc. #38] is **DENIED.**